## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOLO DESIGN, LTD.,<br><br>                    *Plaintiff*,<br><br>v.<br><br>PARTY RENTAL LTD.,<br><br>                    *Defendant*. | Civil Action No.<br><br><br>**VERIFIED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Molo Design, Ltd. ("Plaintiff" or "Molo") files this Complaint for patent infringement and trademark infringement against Party Rental Ltd. ("Defendant" or "Party Rental").

## PARTIES

1.     Plaintiff Molo is a Canadian limited liability company having its principal place of business at 1470 Venables St., Vancouver BC V5L 2G7.

2.     Upon information and belief, Defendant Party Rental is a limited liability company with its principal place of business at 275 North St., Teterboro, New Jersey 07608.

## JURISDICTION AND VENUE

3.     This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.* and for trademark infringement under 15 U.S.C. §§ 1051, *et seq.* and the common law. This Court has original jurisdiction over the subject matter of this Complaint under 28 U.S.C. §§ 1331 and 1338(a).

4.      Upon information and belief, this Court has personal jurisdiction over Party Rental,

because, *inter alia*, Party Rental is incorporated in New Jersey and maintains its principal place of business in New Jersey; has substantial, continuous, and systematic contacts within the State of New Jersey; markets, uses, sells, and/or distributes products to residents of the State of New Jersey; and enjoys substantial income from sales or use of its products in the State of New Jersey. In addition, Party Rental has infringed one or more claims of the Asserted Patents and the Asserted Trademark in this Judicial District.

5.      The state law claims asserted herein are so related to those over which this Court has original jurisdiction as to form part of the same case or controversy. Therefore, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims asserted herein.

6.      Venue is proper in this Judicial District under 28 U.S.C. §§ 1400 and 1391, at least because Party Rental is incorporated in the State of New Jersey, maintains its principal place of business and registered offices in this District, and/or has a regular and established place of business in this District and has committed acts of infringement in this District. Accordingly, Party Rental resides in New Jersey and in this District pursuant to both 28 U.S.C. § 1400(b) (for patent infringement) and pursuant to § 1391(c)(2) (for trademark infringement under the general venue statute).

## FACTUAL BACKGROUND

7.      Molo incorporates and realleges the foregoing paragraphs as though fully set forth herein.

8.      Molo is a design and production studio, based in Vancouver, Canada, that is led by Stephanie Forsythe and Todd MacAllen. Ms. Forsythe and Mr. MacAllen first began working together in architecture school, going on to win a number of accolades for design projects and conceptual ideas, including the Grand Prize in the Aomori Northern Style Housing Competition

2

in Japan. Throughout their careers, Ms. Forsythe and Mr. MacAllen have also been inspired by the concept of smaller, tactile objects having true potency in the experience of space.

9.      Drawing on these experiences, Ms. Forsythe and Mr. MacAllen formed Molo to explore how furniture can heighten the sense of human scale and experience, as well as how furniture and product design can benefit from thinking in the larger context of place and space making.   Molo follows these principles in making a variety of products that are balanced between the realms of art, design, and architecture.   Among other products, Molo makes award-winning flexible space partitions—known as softwall + softblock products—that exemplify its exploration of experiential space making.  Examples of these products are illustrated below:

 

 

10.    Examples of these products used by Molo's customers are illustrated below:

**Bottega Venata Store**



**Repetto brand products at
Le Bon Marche Store**



11.     Thanks to Ms. Forsythe's and Mr. MacAllen's constant search for innovation and remarkable creativity, Molo has collected, in the almost two decades since its foundation, an impressive list of orders, successes, and awards.  Molo's designs have been recognized in the design industry for their poetic beauty and pragmatic innovation.  Among other accolades, Molo has been honored with the prestigious Danish INDEX Award for softwall; the Emerging Voices Award from The Architectural League of New York; the Design Vanguard · Architectural Record Magazine (USA); and the bestowed the great honor of having the Museum of Modern Art (MoMA) in New York collect three different iterations of their softwall between 2005 and 2010 for their permanent collection.

12.     Leading retailers and design companies, including Dior, Louis Vuitton, and Hermes recognize Molo's design and innovation and have purchased Molo's softwall + softblock products. United States based clients that have also purchased Molo softwall + softblock products include at least Apple, Nike, Estee Lauder, Levi Strauss & Co, Calvin Klein, Tommy Hilfiger, Vanity Fair, Condé Nast, NASA, MasterCard, Google, Facebook, Instagram, and Ebay.  Molo's softwall + softblock products can also be seen in retail settings, showrooms, commercial spaces, offices and exhibitions across the world, including in New York, Chicago, Las Vegas, Austin, Detroit, Los Angeles, San Francisco, Toronto, Vancouver, Paris, Barcelona, Milan, Berlin, London, Copenhagen, Shanghai, and Tokyo.

13.     Molo also invests in and ensures the quality and safety of their softwall + softblock products with fire ratings, electrical certifications, and Forestry Stewardship Council certifications in their use of paper.

14.     On information and belief, Molo and Party Rental had discussions and exchanges since at least February 14, 2024, when a Party Rental employee expressed interest in Molo's

collection. Communications from Molo via e-mail included contact information for Molo as well as pointing recipients to Molo's virtual marking on its website at https://molodesign.com/ip/.



The website specifically identifies Molo's "softwall™ | flexible freestanding partition" as practicing U.S. Patent Numbers 7,866,366; 9,309,668; 9,394,686; and 9,689,161.

15.     By June 2025, Molo had become aware of infringement of its patents and trademark by Party Rental. On June 4, 2025, Molo's counsel sent a cease-and-desist letter by e-mail to Party Rental regarding Party Rental's "Soft Wall Room Divider" and its infringement of at least U.S. Patent Nos. 7,866,366 and 9,689,161 and U.S. Trademark Registration No. 6,225,261 (SOFTWALL). Molo's counsel requested a response within 14 days of receipt (*i.e.*, by June 18, 2025). Molo's counsel has not received a response.

## COUNT I – Infringement of U.S. Patent No. 7,866,366

16.     Molo incorporates and realleges the foregoing paragraphs as though fully set forth herein.

17.     On January 12, 2011, the USPTO duly and legally issued United States Patent No. 7,866,366 ("the '366 Patent"), entitled "Flexible Furniture System."  A true and correct copy of the '366 Patent is attached as Exhibit A.

18.     On October 9, 2023, the USPTO's Patent Trial and Appeal Board issued a final written decision upholding the validity of all claims of the '366 patent against all challenges made by Chanel, Inc.

19.  Molo is the owner, by assignment, of the '366 Patent. Molo holds all right, title, and interest in and to the '366 Patent, including the right to enforce the '366 Patent and sue and recover damages for infringement thereof.

20.  Claim 1 of the '366 Patent recites: "An article of flexible furniture having a core formed from a plurality of laminar panels of a flaccid material and each panel having a pair of oppositely directed major faces, adjacent faces of said panels being inter-connected to provide a cellular structure upon movement of abutting faces away from each other, a pair of supports at opposite ends of said core and connected to respective ones of said faces, said supports being self-supporting to provide rigidity to said core whereby said supports may be moved apart to expand said cellular structure and extend the length of said core and flexible so as to be foldable into a tubular configuration about an axis parallel to said major faces, and a plurality of fasteners on each of said supports to secure said supports in said tubular configuration and to permit connection to an adjacent support of another similar article."

21.  On information and belief, and pursuant to 35 U.S.C. § 271(a), Defendant has been and is now directly infringing, literally and/or under the doctrine or equivalents, at least claim 1 of the '366 Patent by making, using, offering to sell, selling (directly or through intermediaries), and/or importing, in this District and elsewhere in the United States, "Soft Wall Room Dividers."

22.  On information and belief, and as illustrated in the figures below, Defendant's "Soft Wall Room Dividers" are articles of flexible furniture having a core formed from a plurality of laminar panels, in which each panel has a pair of oppositely directed major faces. Specifically, Defendant's "Soft Wall" comprise a core formed by a plurality of laminar panels, made of paper, in which each panel has a pair of oppositely directed major faces. On information and belief, and as illustrated in the figure below, the adjacent faces of these panels are inter-connected to provide

a cellular structure upon movement of abutting faces away from each other.

| **Interconnected Paper Core forming a Cellular Structure in Defendant's "Soft Wall"** | **Figures of the '366 Patent Illustrating Cellular Structure of Interconnected Paper Core** |
|---|---|
|  |  |
|  |  |

FIG 5

23.     Upon information and belief, and as illustrated below, Defendant's "Soft Wall

Room Dividers" also include a pair of supports at opposite ends of the core, which are connected to the faces.



| Supports At End of Core In Defendant's "Soft Wall" | Illustrations of  Supports At End of Core in the '366 Patent |

FIG 5

24.    Upon information and belief, and as illustrated below, the supports in Defendant's "Soft Wall Room Dividers" provide rigidity and may be moved apart to expand the cellular

structure and extend the length of the core.   Further, upon information and belief, the supports are

also flexible so as be foldable into a tubular configuration about an axis parallel to the panel faces.

**Supports Foldable in Tubular Configuration**
**In Defendant's "Soft Wall"**

**Illustration of a Tubular**
**Configuration in the '366 Patent**



25.    Upon information and belief, and as illustrated below, Defendant's "Soft Wall

Room Dividers" also include a plurality of fasteners on each of the supports to secure them in a

tubular configuration and to permit connection to an adjacent support.

**Fasteners In Defendant's "Soft Wall"**    **Illustration of a Fastener in the '366 Patent**
(using rare earth magnets 142)



FIG. 10

26.     Accordingly, for at least these reasons, Defendant has infringed, and continue to infringe, one or more claims of the '366 Patent.

27.     Moreover, Defendant's infringement of the '366 Patent has been willful, deliberate, and in reckless disregard of Molo's patent rights.  On information and belief, Party Rental has been aware of Molo and its products since at least February 2024.

28.     Moreover, Molo's website contains a virtual marking page confirming that its softwall + softblock product is covered by the '366 Patent.  See https://molodesign.com/ip/.

Molo's specification for the softwall + softblock product, which is available on its website, also confirms that the products are covered by one or more patents and directs customers to Molo's virtual marking website:

> products
>
> softwall™ | flexible freestanding partition
> softblock™ | modular acoustic room divider
> thinwall™ | acoustic wall liner + cabinet
> enclosure
>
> U.S. Patent Numbers:
> 7,866,366;
> 9,309,668;
> 9,394,686;
> 9,689,161

29.     Thus, on information and belief, Party Rental had knowledge of the '366 Patent and knew that its use of reproduction softwalls, which are not authorized by Molo, constituted infringement of the '366 Patent. Alternatively, Party Rental was willfully blind regarding their infringement of the '366 Patent. On information and belief, Party Rental's infringement of the '366 Patent has thus been egregious, willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, and characteristic of a pirate.

30.     Additionally, Party Rental has indirectly infringed the '366 Patent by actively encouraging its customers to directly infringe the '366 Patent. Specifically, Party Rental encourages infringement by renting out products it knew or had reason to know infringed the '366 Patent.

31.     Molo has been damaged by Defendant's infringement of the '366 Patent in an

amount to be determined at trial and has suffered and will continue to suffer irreparable loss and injury unless Defendant is permanently enjoined from infringing the '366 Patent.

### COUNT II – Infringement of U.S. Patent No. 9,689,161

32.    Molo incorporates and realleges the foregoing paragraphs as though fully set forth herein.

33.    On June 27, 2017, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 9,689,161 ("the '161 Patent"), entitled "Flexible Furniture System."  A true and correct copy of the '161 Patent is attached as Exhibit B.

34.    On October 9, 2023 the USPTO's Patent Trial and Appeal Board issued a final written decision upholding the validity of claims 1–10, 12, 14, and 18 of the '161 patent.

35.    Molo is the owner, by assignment, of the '161 Patent.  Molo holds all right, title, and interest in and to the '161 Patent, including the right to enforce the '161 Patent and sue and recover damages for infringement thereof.

36.    Claim 1 of the '161 Patent recites:  "A method for partitioning an area of a room, the method comprising: positioning an extensible wall in the area of said room, said wall having a base, a top, oppositely directed surfaces extending between said base and said top, said base, top and surfaces defining a core, said core comprising a cellular structure having multiple voids extending from said base to said top upon movement of said oppositely directed surfaces away from each other, said base having a width of at least 10 centimeters and said core having a height of at least 1 meter; placing said base on a floor of said room, and moving opposite ends of said core apart to expand said cellular structure and extend the length of said core and to form at least a substantially straight freestanding wall configuration, whilst maintaining its vertical extent."

37.    On information and belief, and pursuant to 35 U.S.C. § 271(a), Defendant has been

and is now directly infringing, literally and/or under the doctrine or equivalents, at least claim 1 of the '161 Patent by making, using, offering to sell, selling (directly or through intermediaries), and/or importing, in this District and elsewhere in the United States, flexible softwall structures.

38.    Party Rental's "Soft Wall Room Divider" is used to partition an area of a room. The name of the product itself includes the words "Room Divider."

39.    Party Rental's "Soft Wall Room Divider" is an extensible wall erected in a room. Party Rental's website calls it an "accordion design."

# Soft Wall Room Divider 8'

Transform your event space effortlessly with our versatile Soft wall Room Dividers. These lightweight, freestanding partitions feature a flexible accordion design, allowing you to instantly create unique shapes, curves, or straight walls. Perfect for defining areas, managing guest flow, or adding an elegant backdrop.

40.    Party Rental's "Soft Wall Room Divider" has a base, a top, and oppositely directed surfaces extending between the base and the top.



14

41.    Party Rental's "Soft Wall Room Divider" comprises a cellular structure with multiple voids extending from the base to the top upon movement of the oppositely directed surfaces away from each other.





42.    Party Rental's base is at least 10 centimeters and the height is at least 1 meter. Party Rental specifies the base is 15 inches (38.1 centimeters) and the height is 96 inches (2.44 meters).

## ADDITIONAL INFORMATION

### Measurements

Width: 15.00 in.
Height: 96.00 in.

43.    Party Rental's product has its base placed on the floor and the opposite ends are moved apart to expand the cellular structure and form a substantially straight freestanding wall configuration while maintaining its vertical extent.



## Soft Wall Room Divider 8'

Transform your event space effortlessly with our versatile Soft wall Room Dividers. These lightweight, freestanding partitions feature a <u>flexible accordion design</u>, allowing you to <u>instantly create</u> unique shapes, curves, or <u>straight walls</u>. Perfect for defining areas, managing guest flow, or adding an elegant backdrop.

44.     The extensibility of the Party Wall "Soft Wall Room Divider" is further shown by it coming in a flat, rectangular bag for storage and transportation.



45.     Accordingly, for at least these reasons, Defendant has infringed, and continues to infringe, one or more claims of the '161 Patent.

46.     Moreover, Defendant's infringement of the '161 Patent has been willful, deliberate, and in reckless disregard of Molo's patent rights.  On information and belief, Party Rental has been aware of Molo and its products since at least February 24, 2024.

47.     Moreover, Molo's website contains a virtual marking page confirming that the softwall + softblock product is covered by the '161 Patent.  See https://molodesign.com/ip/. Molo's specification for the softwall + softblock products, which is available on its website, also confirms that the products are covered by one or more patents and directs customers to Molo's virtual marking website:

products

softwall™ | flexible freestanding partition
softblock™ | modular acoustic room divider
thinwall™ | acoustic wall liner + cabinet
enclosure

U.S. Patent Numbers:
7,866,366;
9,309,668;
9,394,686;
9,689,161

48.    Thus, on information and belief, Party Rental knew of the '161 Patent and knew that its use of reproduction softwalls, which are not authorized by Molo, constituted infringement of the '161 Patent.  Alternatively, Party Rental was willfully blind regarding its infringement of the '161 Patent.  On information and belief, Party Rental's infringement of the '161 Patent has thus been egregious, willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, and characteristic of a pirate.

49.    Additionally, Party Rental has indirectly infringed the '161 Patent by actively encouraging its customers to directly infringe the '161 Patent. Specifically, Party Rental encourages infringement by renting out products it knew or had reason to know infringed the '161 Patent.

50.    Molo has been damaged by Defendant's infringement of the '161 Patent in an amount to be determined at trial and has suffered and will continue to suffer irreparable loss and injury unless Defendant is permanently enjoined from infringing the '161 Patent.

## COUNT III – Trademark Infringement under 15 U.S.C. § 1114

51.    Molo incorporates and realleges the foregoing paragraphs as though fully set forth herein.

52.    On December 22, 2020, the USPTO duly and legally registered United States Trademark Registration No. 6,225,261 ("the MARK") SOFTWALL for "Furniture for the home, namely, furniture space partitions, movable space partitions, non-movable space partitions, and free standing space partitions and privacy screens for the home; furniture for the office, namely, furniture space partitions, movable space partitions, non-movable space partitions, and free standing space partitions and privacy screens for the office; furniture for shops and public spaces, namely, lobbies, galleries, lounges, halls, auditoriums, receptions, theatres, schools, libraries, restaurants, courtyards, namely, furniture space partitions, movable space partitions, non-movable space partitions, and free standing space partitions and privacy screens for shops and public spaces, namely, lobbies, galleries, lounges, halls, auditoriums, receptions, theatres, schools, libraries, restaurants, courtyards; display units used in exhibitions and trade shows, building materials and systems, namely, furniture and room dividers, namely, modular space enclosure systems for the home, office, shops and public spaces, namely, lobbies, galleries, lounges, halls, auditoriums, receptions, theatres, schools, libraries, restaurants, courtyards."

53.    Molo is the owner of the MARK. Molo holds all right, title, and interest in and to the MARK, including the right to enforce and sue and recover damages for infringement thereof.

54.    Pursuant to 15 U.S.C. § 1114, Defendant has been and is now infringing the MARK.

55.    Party Rental's website, https://www.partyrentalltd.com uses the MARK in numerous locations. For example, the top navigation bar of the website lists "Softwalls and

Screens" under the "Products" category (as indicated by the red ellipse below).



56.     Clicking on the "Softwalls & Screens" menu item brings up a page that also uses the MARK, both in a breadcrumb navigation menu at the top and as a title for the page (as indicated by the red ellipses below).



57.     Clicking on the "Room Dividers" links brings up another page that uses the MARK. The page also uses the term "Soft Wall" (with a space) that is at least confusingly similar to the MARK. The page further suggests the terms Softwall and Soft Wall have similar meaning.



58.     Clicking on the "Soft Wall Room Divider 8'" picture brings up another page that uses the MARK. The page also uses the term "Soft Wall" (with a space) that is at least confusingly similar to the MARK. The page further suggests the terms Softwall and Soft Wall have similar meaning.





59.    From the home page, when clicking on the "What's New" link near the bottom, another page is presented that also uses the term "Soft Wall," which is at least confusingly similar to, if not use of, the MARK.



60.    Defendant also uses the term "Soft Wall" on its Instagram account in advertising the infringing products, which is at least confusingly similar to, if not use of, the MARK.



61.    Party Rental is not authorized to use the MARK.

62.    Party Rental's unauthorized use of "Soft Wall," "Softwall," and any confusingly similar variants to the MARK in doing business and in its advertising and promotional materials has caused or is likely to cause confusion, mistake, or deception among consumers and customers as to the source, origin, nature, quality, or sponsorship of such services or products, or as to the affiliation, connection, or association of those services or products with Molo. The consuming public is likely to believe that Party Rental's use of Molo's trademark in connection with Party Rental's services and products is authorized, licensed, or sponsored by Molo, which is not the case.

63.    As a proximate result of Party Rental's actions, Molo has suffered and will continue to suffer damage to its business, goodwill, reputation, profits, and strength of its MARK. The injury to Molo is substantial, ongoing, continuous, and irreparable. A monetary award of damages alone cannot fully compensate Molo for its damages caused by Party Rental, and Molo lacks an adequate remedy at law.

64.    The foregoing acts have been and continue to be deliberate, willful, and wanton, making this case exceptional under 15 U.S.C. § 1117.

23

65.     Molo is entitled to temporary and permanent injunctions against Party Rental, as well as other remedies available under the Lanham Act including, but not limited to, compensatory damages, treble damages, disgorgement of Party Rental's profits, costs, and attorneys' fees.

### COUNT IV – Trademark Infringement under 15 U.S.C. § 1125

66.     Molo incorporates and realleges the foregoing paragraphs as though fully set forth herein.

67.     Molo owns and holds common law rights in and to the MARK throughout New Jersey and the United States based on its continuous use of the MARK since 2005. Molo has extensively marketed and promoted the MARK such that consumers know and recognize the MARK and associate it distinctly with Molo and the high-quality products and services that Molo markets, sells and provides. As a result, the MARK has acquired valuable good will and fame throughout New Jersey and the United States.

68.     Party Rental's unauthorized use of the Infringing Mark in New Jersey and other geographical areas throughout the United States in doing business and in connection with the infringing products and services, as well as use of the MARK and confusingly similar variants in advertising and promotional materials, has caused and/or is likely to continue to cause, confusion, mistake or deception among consumers as to the source, origin, or sponsorship of such services or as to the affiliation, connection or association of Party Rentals with Molo. The consuming public is likely to believe that Party Rental's Infringing Services are authorized, licensed, or sponsored by Molo when such is not the case.

69.     Party Rental's use of the MARK and confusingly similar variants constitutes infringement of Molo's valid and subsisting common law rights in the MARK in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

70.     As a proximate result of Party Rental's actions, Molo has suffered and will continue to suffer substantial damage to its business, goodwill, reputation, profits and strength of its MARK. The injury to Molo is ongoing, continuous and irreparable. A monetary award of damages alone cannot fully compensate Molo for its damages caused by Party Rental, and Molo lacks an adequate remedy at law.

71.     The foregoing acts have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

72.     Molo is entitled to temporary and permanent injunctions against Party Rental, as well as all other remedies available under the Lanham Act including, but not limited to, compensatory damages, treble damages, disgorgement of Party Rental's profits, and costs and attorneys' fees, in an amount to be determined at trial.

## COUNT V – False Association under 15 U.S.C. § 1125(a)

73.     Molo incorporates and realleges the foregoing paragraphs as though fully set forth herein.

74.     Party Rental's unauthorized use of the MARK in connection with infringing products and services is likely to cause confusion, mistake or deception among consumers as to the source, origin, sponsorship or approval of Party Rental's infringing products and services, in that consumers or others are likely to believe that Party Rental is associated with, connected to, affiliated with or related to Molo or that Molo authorizes, licenses, sponsors and/or controls the sale of Party Rentals products or services, when such is not the case.

75.     Party Rental's actions, as alleged herein, falsely suggest a connection with Molo and constitute false association in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

76.     The foregoing acts have been and continue to be deliberate, willful and wanton.

77.     As a direct and proximate result of Party Rental's actions, Molo has suffered and will continue to suffer substantial damage to its business, goodwill, reputation, profits and strength of its MARK. The injury to Molo is ongoing, continuous and irreparable.

78.     A monetary award of damages alone cannot fully compensate Molo for its damages caused by Party Rental, and Molo lacks an adequate remedy at law. Accordingly, Molo is entitled to an order preliminarily and permanently enjoining and restraining Party Rental from using the MARK and/or any confusingly similar variation thereof.

79.     Additionally, as a result of Party Rental's actions described herein and pursuant to 15 U.S.C. § 1117(a), Molo is entitled to and should be awarded Party Rental's profits, any damages sustained by Molo, and the costs of this action, in amounts to be determined at trial, as well as other available remedies, including, attorneys' fees, in an amount to be determined at trial.

## COUNT VI – False Designation of Origin under 15 U.S.C. § 1125(a)

80.     Molo incorporates and realleges the foregoing paragraphs as though fully set forth herein.

81.     The MARK is a distinctive mark and has become associated with Molo and, thus, exclusively identify Molo's business, goods and services.

82.     Because of Party Rental's wrongful use of the MARK, consumers and customers are deceptively led to believe that Party Rental's products and services originate with, are sponsored by, or otherwise approved by Molo in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or alternatively, will cause consumers to believe that the MARK is generic, thus destroying the goodwill and value Molo has built in and with the MARK.

83.     The foregoing acts and conduct by Party Rental constitute false designation of

origin, passing off and false advertising in connection with goods and services distributed in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

84.      As a proximate result of Party Rental's actions, Molo has suffered and will continue to suffer substantial damage to its business, goodwill, reputation, profits and strength of its MARK. The injury to Molo is ongoing, continuous, and irreparable. A monetary award of damages alone cannot fully compensate Molo for its damages caused by Party Rental, and Molo lacks an adequate remedy at law.

85.      Molo is entitled to temporary and permanent injunctions against Party Rental, as well as all other remedies available under the Lanham Act including, but not limited to, compensatory damages, treble damages, disgorgement of Party Rental's profits, and costs and attorneys' fees, in an amount to be determined at trial.

### COUNT VII – Trademark Dilution under 15 U.S.C. § 1125(c)

86.      Molo incorporates and realleges the foregoing paragraphs as though fully set forth herein.

87.      The MARK is a distinctive mark and has become associated with Molo and, thus, exclusively identify Molo's business, goods and services.

88.      Party Rental's use of the MARK in commerce is likely to cause dilution by blurring or dilution by tarnishment of the MARK.

89.      Molo is entitled to an injunction against Party Rental under 15 U.S.C. § 1125(c)(1).

### COUNT VIII – Unfair Competition under New Jersey Common Law

90.      Molo incorporates and realleges the foregoing paragraphs as though fully set forth herein.

91.    Molo first adopted and used the MARK throughout New Jersey and interstate commerce in marketing, advertising and sales to identify Molo as the source of high-quality flexible freestanding partitions. Consumers associate the origin of the Molo Goods and Services under its MARK as being provided and sold by Molo.

92.    Party Rental is competing with Molo in the same geographical markets and/or geographical areas of the United States.

93.    Party Rental is using the MARK without authorization, in commerce in connection with the sale, offering for sale and/or advertising of its infringing products or services as set forth above.

94.    Party Rental's unauthorized use of the MARK is causing or is likely to cause customer confusion as to the origin, sponsorship, or approval of Party Rental's products or services.

95.    Moreover, Party Rental's unauthorized use of the MARK has allowed Party Rental to use, trade off of, and benefit from Molo and its MARK's valuable goodwill.

96.    Party Rental is engaging in unfair acts of competition in violation of New Jersey law and have infringed Molo's trademark rights in the MARK.

97.    Party Rental's use of the MARK is causing and will continue to cause substantial damage to Molo including, but not limited to, irreparable harm. Molo has no adequate remedy at law.

98.    Molo is entitled to a temporary and permanent injunction against Party Rental, as well as all other remedies available including, but not limited to, compensatory damages, treble damages, disgorgement of Party Rental's profits, and costs and attorneys' fees, in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable by jury.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

(a)    a finding that the '366 Patent and the '161 Patent are valid, enforceable, and have been infringed by Defendant;

(b)    a judgment that Defendant's infringement of the '366 Patent and the '161 Patent, is willful;

(c)    an award of Plaintiff's damages or other monetary relief to adequately compensate Plaintiff for Defendant's infringement of the '366 Patent and the '161 Patent;

(d)    a judgment that Plaintiff's damages be trebled under 35 U.S.C. §284, with pre-judgment and post-judgment interest as allowed by law;

(e)    an injunction against further infringement of the '366 or '161 Patents;

(f)    a finding that the '261 trademark is valid and has been infringed by Defendant under 15 U.S.C. § 1114;

(g)    a finding that the '261 trademark is valid and has been infringed by Defendant under 15 U.S.C. § 1125;

(h)    a finding that the '261 trademark is valid and Defendant has committed False Association under 15 U.S.C. § 1125(a);

(i)    a finding that the '261 trademark is valid and Defendant has committed False Designation of Origin under 15 U.S.C. § 1125(a);

(j)     a finding that the '261 trademark is valid and Defendant has committed Trademark Dilution under 15 U.S.C. § 1125(c);

(k)     a finding that Defendant has committed unfair competition under New Jersey common law for Defendant's use of "Softwall," "Soft Wall," and confusingly similar terms;

(l)     an award of Defendants' profits, Plaintiff's damages, costs of the action for trademark infringement, trademark dilution, false association, and false designation of origin, or other monetary relief to adequately compensate Plaintiff for Defendant's infringement of the '261 trademark;

(m)     a trebling of damages under 15 U.S.C. § 1117;

(n)     a temporary and permanent injunction enjoining Defendant from further infringement of the '261 trademark;

(o)     an order for Defendant to destroy all infringing articles;

(p)     a judgment that this is an exceptional case under 35 U.S.C. § 285 and awarding Plaintiff its attorneys' fees, expert witness fees, costs, and all expenses incurred in this action, with interest;

(q)     a judgment that this is an exceptional case under 15 U.S.C. §§ 1117(a), 1117(b), and 1125(c), and trebling any damages awarded and awarding Plaintiff its attorneys' fees, expert witness fees, costs, and all expenses incurred in this action, with interest;

(r)     for prejudgment interest according to the law; and

(s)     an award of any further and additional relief to Plaintiff as this Court deems just and proper.

Dated: June 24, 2025                        By:   _/s/ David Ball_
                                                    David Ball
                                                    New Jersey Bar No. 036732004

**Bracewell LLP**
david.ball@bracewell.com
31 West 52nd Street, 19th Floor
New York, NY 10019
Telephone: (212) 508-6133

Michael Chibib (*pro hac vice* pending)
Texas Bar No. 00793497
michael.chibib@bracewell.com
Conor M. Civins (*pro hac vice* pending)
Texas Bar No. 24040693
conor.civins@bracewell.com
Christopher J. Mierzejewski (*pro hac vice* pending)
Texas State Bar No. 24070270
chris.mierzejewski@bracewell.com
111 Congress Ave. Suite 2300
Austin, TX 78701
Telephone: (512) 472-7800

*Attorneys for Plaintiff Molo Design Ltd.*

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: June 24, 2025

By: _/s/ David Ball_
       David Ball

## **LOCAL CIVIL RULE 201.1 CERTIFICATION**

Pursuant to Local Civil Rule 201.1, I hereby certify that the matter in controversy is not subject to compulsory arbitration because Plaintiff seeks injunctive relief and because Plaintiff seeks damages in excess of $150,000.

Dated June 24, 2025

By:  _/s/ David Ball_____
        David Ball

## **VERIFICATION**

I, Todd MacAllen, declare the following pursuant to 28 U.S.C. § 1746:

I am the Co-Director / Co-Lead Designer of Molo Design, LTD. I have read, am familiar with, and have personal knowledge of the contents of the foregoing Verified Complaint. The allegations set forth in the Verified Complaint are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

June 24, 2025

_____

# EXHIBIT A

US007866366B2

(12) **United States Patent**
MacAllen et al.

(10) Patent No.: **US 7,866,366 B2**
(45) Date of Patent: ***Jan. 11, 2011**

(54) **FLEXIBLE FURNITURE SYSTEM**

(75) Inventors: **Todd P. MacAllen**, Vancouver (CA);
**Stephanie P. Forsythe**, Vancouver (CA)

(73) Assignee: **Molo design, Ltd.**, Vancouver (CA)

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 396 days.

This patent is subject to a terminal dis-
claimer.

(21) Appl. No.: **11/742,984**

(22) Filed: **May 1, 2007**

(65) **Prior Publication Data**

US 2008/0023156 A1      Jan. 31, 2008

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 11/287,195,
filed on Nov. 28, 2005.

(60) Provisional application No. 60/681,972, filed on May
18, 2005.

(30) **Foreign Application Priority Data**

Nov. 25, 2005    (CA)    ................................... 2527927

(51) **Int. Cl.**
*A47H 5/00*    (2006.01)
(52) **U.S. Cl.** .................... **160/84.05**; 160/135; 160/351;
108/157.14
(58) **Field of Classification Search** ............. 160/84.05,
160/351, 135, 113, 114; 410/154; 428/116,
428/118, 178; 52/793.1, 793.11; 156/197;
108/157.14
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 2,101,836 | A | * | 12/1937 | Benedict ..................... 52/406.3 |
| 2,324,398 | A | * | 7/1943 | Kahr ........................... 160/113 |
| 3,170,831 | A | * | 2/1965 | Paige ............................. 428/9 |
| 4,671,334 | A | * | 6/1987 | Yadegar et al. ........... 160/84.04 |
| 4,970,831 | A | * | 11/1990 | Rota .......................... 52/2.23 |
| 5,193,601 | A | * | 3/1993 | Corey et al. .............. 160/84.02 |
| 6,427,409 | B2 | * | 8/2002 | Colson et al. ............ 52/506.08 |
| 6,527,895 | B1 | * | 3/2003 | Palmer ...................... 156/197 |
| 6,959,752 | B2 | * | 11/2005 | Huang ................... 160/370.23 |

OTHER PUBLICATIONS

Pedersen, Martin C.; "The Soft House"; Metropolis Magazine; Jul.
2004; New York.

* cited by examiner

*Primary Examiner*—Blair M. Johnson
(74) *Attorney, Agent, or Firm*—Blake, Cassels & Graydon
LLP; John R.S. Orange; Wilfred So

(57) **ABSTRACT**

An article of flexible furniture having a core formed from a
plurality of laminar panels of a flaccid material and each panel
having a pair of oppositely directed major faces, adjacent
faces of said panels being inter-connected to provide a cellu-
lar structure upon movement of abutting faces away firm each
other, a pair of supports at opposite ends of said core and
connected to respective ones of said faces, said supports being
self-supporting to provide rigidity to said core whereby said
supports may be moved apart to expand said cellular and
extend the length of said partition.

**27 Claims, 14 Drawing Sheets**





FIG 1



FIG 2

FIG 3



FIG 4



(a)



(b)

**FIG 5**



FIG 6



(34)

FIG 7



FIG 8



FIG 9



FIG. 10



FIG. 11



FIG. 12



FIG. 13



FIG. 14



FIG. 15



FIG. 16



FIG. 17

US 7,866,366 B2

**1**

## FLEXIBLE FURNITURE SYSTEM

### CROSS REFERENCE TO RELATED APPLICATIONS

The present invention is a continuation-in-part of U.S. patent application Ser. No. 11/287,195 field on Nov. 28, 2005 which claims priority from U.S. Provisional Patent Application No. 60/681,977 filed on May 18, 2005 and claims foreign priority from Canadian Patent Application No. 2,527,927 filed on Nov. 25, 2005, all of which are hereby incorporated by reference.

### FIELD OF THE INVENTION

The present invention relates to flexible furniture components and methods of making such components.

### DESCRIPTION OF THE PRIOR ART

Furniture is a staple product used in domestic, working and public environments. Furniture may be used to facilitate the use of space, such as in a seat or table, or to divide space, such as in a partition. By way of example, partitions are frequently used to subdivide spaces, or to create more intimate spaces. Typically such partitions are rigid, or have rigid frames, or are formed from rigid interconnected panels and they are relatively large, heavy, and cumbersome, and therefore difficult to set-up, take down, store, and transport. Similarly other items of furniture, such as seating structures, are typically of a rigid, or permanent nature that, at most, are moveable to alternative locations.

Moreover, the inherent rigidity of such items of furniture limits the extent to which they can be dynamically resized (extended or contracted) and reshaped to suit varying spaces and requirements, or readily moved around for relocation, or storage.

Additionally, such furniture items, particularly in the form of partitions are typically formed from opaque panels which inhibit the penetration of light, therefore necessitating increased use of, or rearrangement of artificial lighting to restore adequate lighting levels.

In domestic, working, and public environments it is frequently desirable to be able to subdivide and reshape space on a temporary basis. For example, visitors may require a temporary sitting or sleeping area, office workers may need to convert an open plan area into subdivided working space or temporary meeting space, trade show participants may need to demarcate a temporary display area, and designers may need to create and shape a temporary area for an event, or a backdrop for a designed area, such as in a window display in a retail setting, in a showroom, or in a theatrical setting. For these types of applications, furniture components that are rigid, heavy, and/or cumbersome may be costly to transport, difficult to set up/take down, and may require significant storage space. Furniture in the form of a partition that is rigid will also place significant constraints on the ways in which a given space can be partitioned, limiting its functionality, and a partition that is fully opaque will severely disturb natural lighting.

It is therefore an object of the present invention to provide articles of furniture in which the above disadvantages are obviated or mitigated.

### SUMMARY OF THE INVENTION

According therefore to one aspect of the present invention there is provided an article of furniture having a core formed

**2**

from a plurality of laminar panels of a flexible flaccid material. Each panel has a pair of oppositely-directed major faces with faces of adjacent panels being inter-connected to provide a cellular structure upon movement of the faces away from each other. A respective one of a pair of supports is provided at opposite ends of the core and connected to respective ones of the faces. The supports are self-supporting to provide rigidity to the article of furniture and/or to provide connectivity between like articles of furniture. In this way, the supports may be moved apart to expand the cellular structure and extend the overall length of the article of furniture, and/or be used to connect any of more than one of such articles together in series.

### BRIEF DESCRIPTION OF THE DRAWINGS

Embodiments of the invention will now be described by way of example only with reference to the accompanying drawings in which:

FIG. **1** is a front perspective view of a partition;

FIG. **2** is a perspective view showing three of the panels used to form the partition of FIG. **1**;

FIG. **3** is a view on the line III-III of FIG. **1**;

FIG. **4** is a series of views showing the sequential operations required to erect the panel of FIG. **1**;

FIG. **5** is a detailed view of the portion shown in circle A in FIG. **4**;

FIG. **6** is a view showing the sequential steps to join a pair of panels shown in FIG. **1** end-to-end;

FIG. **7** is a detailed view of the inter-connection of the panels shown in FIG. **6**;

FIG. **8** is a top perspective view showing the arrangement of a panel within a living area;

FIG. **9** is a top perspective view showing an alternative configuration of panel;

FIG. **10** is a schematic representation of an alternative embodiment of connection applied to a partition;

FIG. **11** is a view on the line XI-XI of FIG. **10**;

FIG. **12** is a view in the direction of arrow XII of FIG. **11**;

FIG. **13** is a schematic diagram showing the arrangement of the connection of FIG. **10** with different size partitions;

FIG. **14** is a top perspective view of a seat arrangement incorporating the connection of FIG. **10**;

FIG. **15** is a view on the line XV-XV of FIG. **14**;

FIG. **16** is a front elevation of a light incorporating a connection similar to FIG. **10**; and

FIG. **17** is a section on the line XVII-XVII of FIG. **16**.

### DETAILED DESCRIPTION OF THE INVENTION

Referring therefore to FIG. **1**, a partition **10** comprises a core **12** and a pair of supports **14**, **16** at opposite ends of the core **12**. As can best be seen from FIGS. **2** and **3**, the core **12** is formed from a plurality of panels **18**. The panels **18** each have a pair of oppositely-directed major faces **19**, **20**, and are formed from a flexible flaccid material. In the preferred embodiment, the material forming the panels **18** is standard white, flame retardant tissue paper, having a weight of approximately 13.5 lbs (500 sheets @ 24"×36"=13.5 lbs). Each panel has a major dimension or height h and a width w which may be adjusted to suit particular environments. Typically the height will be in the order of 1-2 metres but could range from 0.5-3 metres when used as a partition, or 0.1 metres to 0.5 metres when used as a seat. A seat height of 0.45 m has been found particularly beneficial. The width is typically in the order of 30 centimetres but could range from 10-100 centimetres. Adjacent panels **18** are inter-connected

US 7,866,366 B2

**3**

to one another at spaced intervals that alternate across the width of the face of the panel **18**. As indicated in FIG. **2**, the connection between panels **18***a* and **18***b* is through a series of parallel, laterally-spaced strips **24** on the face **19** of panel **18***b*. The strips **24** are defined by stripes of adhesive, which connects the panels **18***a*, **18***b* to one another, as shown in FIG. **3**.

Similarly, the inter-connection between a panel **18***b* and **18***c* is through spaced parallel strips **28** on the face **19** of panel **18***c* which are offset from the strips **24**. Each of the panels **18** is therefore alternately connected to the panel **18** on opposite sides so that, as shown in FIG. **3**, upon extension of the panel in a horizontal direction, a cellular structure having voids **30** is formed within the core. The voids **30** extend vertically from top to bottom of the core **12** with the panels **18** providing a continuous transverse barrier. The lateral outer ends of each of the panels **18** are connected so as to form vertical pleats on the exterior faces of the core **12**.

An end panel **18***d* of the core is connected to respective ones of the supports **14** and **16** over its entire width. The supports **14** and **16** are made from a self-supporting material, typically a non woven felt material, which has a degree of flexibility but also has sufficient rigidity to resist collapse of the core **12**. In a typical application, the felt is a 1.95 nominal pounds per square yard felt having a thickness in the order of 3 millimetres, although other weights and thicknesses may be utilized as appropriate depending upon the overall dimensions of the partition **10**. The supports **14** and **16** extend laterally beyond the core as indicated at **32** and are adhered to respective ones of the end panels **18***d*.

Fasteners in the form of a pair of loop and hook strips **34**, such as that sold under the trade name "Velcro" are stitched to the felt supports **14** and **16**, and extend vertically from one end to the other.

The core **12** is collapsible so that the major faces of adjacent panels **18** lay parallel to one another and in abutment. In this position, as shown in FIG. **4***a*, the partition **10** may be stored in a flat, collapsed position. When the partition **10** is required, it can be oriented vertically (FIG. **4***b*) and the opposite supports **14** and **16** used to manipulate the partition. The supports **14** and **16** are moved away from one another as shown in FIG. **4***c* to expand the core so that the cellular structure is opened within the core **12**. The lateral extension of the supports **14**, **16** beyond the core **12** provides marginal tabs that may be grasped to facilitate manipulation of the core without direct contact with the panels **18**.

Once partially extended, the supports **14** and **16** may be folded along a vertical axis to provide enhanced rigidity at each end of the partition **12**. This may be seen in more detail in FIG. **5** where it will be seen that the opposite edges of the supports **14** and **16** may be brought together so that the loop and hook strips **34** are brought into abutment. The loop and hook strips **34** engage one another and thus hold the support in a folded tubular configuration. This movement is accommodated by the flexible nature of the cellular structure which expands towards the lateral edges to accommodate the folding of the supports **14** and **16**. With the supports **14** and **16** folded into a tubular support, extension of the core **12** continues as shown in view (e) of FIG. **4**, until the desired overall length is reached.

With the partition **10** expanded, it has sufficient width to remain stable in a vertical position with the rigidity provided by the end supports **14** and **16**. The material forming the panels **18** is preferably translucent so that a pleasing transmission of light through the panel may occur, while still providing a degree of privacy.

The extended partition as shown in FIG. **4***e* may be adjusted to different configurations as illustrated by the open

**4**

curve shown in FIG. **1** and the wrapped curve shown in FIG. **8**. The core **12** has a surprising degree of flexibility to accommodate different configurations and allow an appropriate shaped and sized partition to be installed in an otherwise open space. By varying the overall dimensions, additional functionality may be obtained. The extended partition shown in FIG. **4***e* may also be made with a lower height, for example 1 metre and a wider base, for example 0.5 metres so that the top surface of the partition may be used as an area to display objects. Such an arrangement is illustrated in FIG. **9**. Where appropriate, the terminal portions of the voids **30** may be used as a pocket to support a container, such as a vase, or similar object. In this embodiment, the height would be between 0.5 and 1.5 metres.

The provision of the supports **14** and **16** also permits a pair of partitions **10** to be joined end-to-end as shown in FIG. **6**. As may be seen from FIG. **6***a*, a pair of partitions **10** is erected and positioned with supports **14**, **16** at opposite ends of each partition adjacent one another. The loop and hook strips **34** in adjacent supports **14**, **16** are then brought into contact with one another as shown in FIG. **7** so that the partitions **10** are joined in seriatim. The additional thickness provided by the double support at the intersection enhances rigidity, with the supports **14**, **16**, at the free ends of the partition being folded upon themselves to provide stable support.

After use of the partition **10**, it is simply necessary to reverse the procedure by moving the ends towards one another, unfolding the supports **14** and **16**, and collapsing the core **12** to its minimum size. It may then be stored and used when subsequently required.

In the above embodiments, the core has been made from a light weight paper material, although it will be apparent that alternative materials may be used that fulfil the same functional requirements. For example, it is possible to utilize a heavier weight paper material, such as Kraft paper, or a non-woven textile material such as a plastic material known as Tyvek from DuPont which is both tear and water resistant. Alternatively, a paper laminated with a plastic film to provide a composite material may be used. With such a core material, the supports **14** may be made of a felt or may be made from a material similar to the core material but with increased thickness. The felt used in the support would be sufficiently flexible to allow folding to define the tubular support structure at each end with fasteners such as the loop and hook strips **34** incorporated on the support. In some applications, the inherent stiffness of the material used in the core is such as to provide sufficient rigidity to the core when the cellular structure is expanded for the core to be self supporting when expanded. Kraft paper or plastics material has provided sufficient rigidity for this purpose. In this case the supports may be provided to permit connectivity if multiple units are to be joined end to end.

Whilst a translucent material is preferred, it will be apparent that opaque or different coloured materials may also be utilized. The dimensions of the void **30** and the number of voids in the lateral direction may be adjusted to suit particular applications. It has been found in practise that a spacing between stripes **24**, **28** in the order of 5-10 centimetres (when unexpanded) is appropriate, although spacing as low as 1 cm. may be used, and that the width of the stripes **24**, **28** is between 1 and 10 millimetres. This arrangement provides a flexible structure with extensive elongation to provide maximum functionality.

An alternative form of connection for articles of flexible furniture is shown in FIG. **10**-**12**, in which like reference numerals will be used to denote like components with a prefix **1** added for clarity. In the embodiment of FIG. **10**, a pair of

US 7,866,366 B2

5

partitions **110** are arranged to be joined end-to-end in a manner similar to that shown in FIG. **6**. The end panel **118***d* of the core **112** is secured to supports **114**, **116**. The supports **114**, **116** are made from a self-supporting material, which in this embodiment are preferably made from a rigid material such as a millboard. The supports **114**, **116** lay within the periphery of the end panel **118***d* so that the end panels **118***d* overlap by a margin in the order of 20 millimetres around the millboard.

Each of the supports **114**, **116** has a series of holes **140**, best seen in FIG. **11** formed through the millboard. The holes are arranged in a regular pattern, as will be described more fully below with respect to FIG. **13**, and are arranged to receive rare earth magnets **142**. The magnets **142** are typically in the order of 3 millimetres thick and 25 millimetres diameter. The magnets are a tight sliding fit in the holes **140** so as to be frictionally retained by the millboard. The millboard itself is chosen to be of the same thickness as the magnet **142** so that the face of the magnet **142** is flush with the surface of the millboard.

The magnets **142** ate oriented such that a common polarity is present for all magnets on one face. Thus the magnets in the support **114** shown in FIG. **10** are oriented such that the north pole is exposed and those of the support **116** in the adjacent partition **110** are arranged such that a south pole is exposed. The exposed end face of the millboard is wrapped by a cover **144** of the same material as used to produce the core **112** for aesthetic purposes and to retain the magnets in situ. The cover **144** extends over the edges and each face of the millboard to provide self contained end supports **114**, **116** to facilitate manufacture as well as enhance the aesthetics.

With the magnets in situ, the partitions **110** may be connected to one another by relying upon the magnetic attraction between the opposite poles of adjacent partition. The rare earth magnets **142** have sufficient force to retain the supports **114**, **116** in abutment with one another. However the supports may be readily separated by sliding the partitions relative to one another or pulling them apart axially to release the magnets. The margin of the end panel **118***d* provides a flexible tab to permit manipulation of the core **112**.

As can be seen in FIG. **13**, the arrangement of magnets **142** on the support **114**, **116** provides a grid that allows different size partitions to be connected in seriatim. The magnets **142** are arranged in two columns in rows uniformly spaced such that a relatively tall partition may be attached to a relatively small partition with the magnets **142** in alignment. The grid also allows partitions to be stacked on top of one another and connected in seriatim to a taller partition to form a continuous wall.

Whilst it is convenient that the supports **114**, **116** are formed from rigid millboard to carry the magnets, it will also be apparent that a similar arrangement may be achieved using the self-supporting flexible supports **114**, **116** such as the felt shown in the embodiments of FIGS. **1** through **9**. The end panel **118***d* and the covering panel **144** secures the magnets **142** within the flexible support **114**, **116** so as to be retained within the hole **140**. This arrangement would also allow the end panels to be folded as shown in FIG. **5** provided that the orientation of the magnets is such that one column has a north polarity and the other column has a south polarity. A complimentary arrangement on the support of an adjacent partition will still permit the partitions to be joined to one another in seriatim as well as folded.

The embodiments are described above in the context of a partition. However, the ability to dimensionally resize the core **12** provides for its use in alternative articles of flexible furniture, such as those shown in FIGS. **14** through **17**. In the embodiment of FIG. **14**, a circular seat **210** is provided having a concave upper surface **211**. As seen in FIG. **15**, the lower

6

surface **213** of the core **212** is planar to sit against the floor and the upper and side surfaces smoothly curved. The opposite end faces **218***d* of the core are secured to supports **214**, **216** that carry a series of magnets **242**. The magnets are wrapped by a cover **244** of the material used to form the core to provide a pleasing aesthetic as well as secure the magnets **242** within the supports **214**, **216**. The seat **210** may be stored in a collapsed flat position and when needed expanded into a circular array with the supports **214**, **216** in abutment. The magnets **242** secure the supports **214**, **216** to one another and hold the core **212** in the circular configuration presenting an upper concave surface **211**. For storage, the supports are separated and the core collapsed to a flat configuration.

As shown in FIG. **14**, the seat **210** is formed from three cores **212** joined end to end to make a torus. It will be apparent that the overall diameter of the seat **210** may be increased by expanding the inner diameter of the torus and thereby further expanding the cores **212**. Alternatively, a single core **212** may be used with the supports **214**,**216** connected to one another, provided there are sufficient laminated panels to permit extension of the core over the required circumference. In this case, the diameter will be similar to that shown in FIG. **14**.

A simple seat may be provided in a similar manner by having an expanded core **212** with a planar upper surface **211**, arranged either in a cylindrical form with supports **214**, **216** in abutment, or in the form of a bench with said supports not in abutment. In each case, multiple units may be joined end to end to increase the diameter of the cylindrical seat, or the length of the bench, which can be arranged linearly, or in an undulating manner, and which can act as a form of partition, as shown in FIGS. **1** to **9**, and may be stacked one on top of the other to increase the overall height.

When used in a seating embodiment, the dimensions of the cellular structure and the stiffness of the material used is adjusted to provide an increased structural rigidity and increased weight bearing capacity, kraft paper has been found to have the requisite properties and it has been found preferable to reduce the spacing between the glue stripes to 2.5 cm so that the maximum dimension of each void **30** in a collapsed state is 5 cm.

A similar arrangement of flexible furniture is used with respect to a light as shown in FIGS. **16** and **17** in which like reference numerals will be used to denote like components with a prefix **3** for clarity. In the embodiments of FIGS. **16** and **17**, a light **310** is formed with a core **312** with end panels **318***d* secured to respective supports **314**, **316**. In this arrangement the axis of the voids is radial although an axial orientation may be used if preferred. The supports, as shown in FIG. **17**, carry an array of magnets **342** so that the supports may be joined to one another as described above. A bulb **350** is located within the centre chimney formed by the fanning of the core **312**. The bulb **350** illuminates the core **312** to provide a pleasing effect and the heat may escape through the central aperture provided by the core. Naturally the core is formed from a fire-resistant material, or the light source produces only a small amount of heat. The light **310** may be collapsed and stored in a flat configuration and deployed as required in different locations.

It will be apparent from the various embodiments described above that the provision of the cellular structure to foam the core and the releasable fastenings provided at the end panels allow for a variety of configurations to be provided. The provision of the magnets or other fasteners in a pre-defined grid permits different components to be joined to one another to increase a variety of configurations that may be utilized. As indicated above, the dimensions of the core may be adjusted to suit particular requirements, ranging from a

US 7,866,366 B2

7

single row of voids to provide a thin or narrow partition, to a relatively wide cellular structure with multiple rows of voids to provide seating or table like surfaces.

Although the invention has been described with reference to certain specific embodiments, various modifications thereof will be apparent to those skilled in the art without departing from the spirit and scope of the invention as outlined in the claims appended hereto. The entire disclosures of all references recited above are incorporated herein by reference.

What is claimed is:

**1**. An article of flexible furniture having a core formed from a plurality of laminar panels of a flaccid material and each panel having a pair of oppositely directed major faces, adjacent faces of said panels being inter-connected to provide a cellular structure upon movement of abutting faces away from each other, a pair of supports at opposite ends of said core and connected to respective ones of said faces, said supports being self-supporting to provide rigidity to said core whereby said supports may be moved apart to expand said cellular structure and extend the length of said core and flexible so as to be foldable into a tubular configuration about an axis parallel to said major faces, and a plurality of fasteners on each of said supports to secure said supports in said tubular configuration and to permit connection to an adjacent support of another similar article.

**2**. An article according to claim **1** wherein the same said fasteners on said supports are operable to maintain said tubular structure and permit connection to an adjacent support.

**3**. An article according to claim **2** wherein said fasteners are loop and hook fasteners.

**4**. An article according to claim **2** wherein said fasteners are magnets.

**5**. An article according to claim **1** wherein said cellular structure defines a plurality of parallel voids oriented on the longitudinal axis of said panels.

**6**. An article according to claim **1** wherein said panels are formed from paper.

**7**. An article according to claim **1** wherein said panels are formed from a non-woven material.

**8**. An article according to claim **7** wherein said non-woven material is a plastic.

**9**. An article according to claim **1** wherein said panels are formed from a composite material.

8

**10**. An article according to claim **9** wherein said composite material includes a plastic and paper.

**11**. An article according to claim **10** wherein said composite material is a paper laminated to a plastic film.

**12**. An article according to claim **1** wherein said supports are formed from a felt panel.

**13**. An article according to claim **1** wherein said supports are formed from a non-woven material.

**14**. An article according to claim **1** wherein said supports are wrapped by a covering.

**15**. An article according to claim **14** wherein said panel extends laterally beyond said supports.

**16**. An article according to claim **1** wherein said fasteners are embedded in said supports so as to be flush with a surface thereof.

**17**. An article according to claim **16** wherein said surface of said supports is covered by a wrapping.

**18**. An article according to claim **1** wherein said fasteners are located at predefined locations to permit attachment of said support to a similar support of a different article.

**19**. An article according to claim **18** wherein said fasteners are magnets arranged on a grid.

**20**. An article according to claim **1** wherein said panels have a major dimension of between 0.1 and 3 meters.

**21**. An article according to claim **20** wherein said panels have a major dimension of between 0.1 and 0.5 meters.

**22**. An article according to claim **20** wherein said panels have a major dimension of between 0.5 and 3 meters.

**23**. An article according to claim **1** wherein said panels have a width of between 10 and 100 centimeters.

**24**. An article according to claim **23** wherein said width is 30 and 45 centimeters.

**25**. An assembly of articles, each constructed according to claim **1**, wherein said articles are arranged in seriatim with a support of one article adjacent to and in abutment with a support of another article, and fasteners releasably securing said supports to one another.

**26**. An assembly according to claim **25** wherein said fasteners are magnets.

**27**. An assembly according to claim **25** wherein said fasteners are hook and loop fasteners.

*   *   *   *   *

# EXHIBIT B

US009689161B2

(12) **United States Patent**
MacAllen et al.

(10) Patent No.: **US 9,689,161 B2**
(45) Date of Patent: **\*Jun. 27, 2017**

(54) **FLEXIBLE FURNITURE SYSTEM**

(71) Applicant: **molo design, ltd.**, Vancouver (CA)

(72) Inventors: **Todd P. MacAllen**, Vancouver (CA);
**Stephanie J. Forsythe**, Vancouver (CA)

(73) Assignee: **molo design, ltd.**, Vancouver (CA)

( \* ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **15/067,541**

(22) Filed: **Mar. 11, 2016**

(65) **Prior Publication Data**
US 2016/0251849 A1     Sep. 1, 2016

**Related U.S. Application Data**

(63) Continuation of application No. 14/698,262, filed on Apr. 28, 2015, now Pat. No. 9,309,668, which is a
(Continued)

(30) **Foreign Application Priority Data**

Nov. 25, 2005     (CA) ...................................... 2527927

(51) **Int. Cl.**
*E04B 2/74*          (2006.01)
*A47G 5/00*          (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC ............. *E04B 2/7401* (2013.01); *A47C 4/04*
(2013.01); *A47C 5/005* (2013.01); *A47G 5/00*
(2013.01);
(Continued)

(58) **Field of Classification Search**
CPC ....... A47G 5/00; E04B 2/7433; E04B 2/7401;
E04B 2/7405; E04B 1/00; A47C 4/04;
A47C 5/005; E06B 9/262
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,101,836 A     12/1937    Benedict
2,324,398 A      7/1943    Kahr
(Continued)

FOREIGN PATENT DOCUMENTS

CA        1166951        5/1984
CA        2586759       11/2006
(Continued)

OTHER PUBLICATIONS

Pedersen, Martin C.; "The Soft House"; Metropolis Magazine, Jul. 2004, New York.
(Continued)

*Primary Examiner* — Blair M Johnson
(74) *Attorney, Agent, or Firm* — Blake, Cassels & Graydon LLP; Wilfred P. So

(57)                    **ABSTRACT**
A freestanding extensible wall for partitioning an area of a room, said wall having a base, a top, oppositely directed surfaces extending between said base and said top, said base, top and surfaces defining a core, said core comprising a cellular structure having multiple voids extending from said base to said top upon movement of said oppositely directed surfaces away from each other, said base having a width of at least 10 centimeters and placed on a floor, and said core having a height of at least 1 meter, whereby opposite ends of said core may be moved apart to expand said cellular structure and extend the length of said core and to form at least a substantially straight freestanding wall configuration, while maintaining its vertical extent.

**35 Claims, 41 Drawing Sheets**



**US 9,689,161 B2**

Page 2

## Related U.S. Application Data

continuation of application No. 14/638,704, filed on Mar. 4, 2015, now Pat. No. 9,290,935, which is a continuation of application No. 14/042,857, filed on Oct. 1, 2013, now Pat. No. 9,243,403, which is a continuation of application No. 12/646,822, filed on Dec. 23, 2009, now Pat. No. 8,561,666, which is a continuation-in-part of application No. 12/343,042, filed on Dec. 23, 2008, now Pat. No. 9,394,686, which is a continuation-in-part of application No. 11/742,984, filed on May 1, 2007, now Pat. No. 7,866,366, which is a continuation-in-part of application No. 11/287,195, filed on Nov. 28, 2005, now abandoned.

(60) Provisional application No. 60/681,972, filed on May 18, 2005.

(51) **Int. Cl.**
*A47C 4/04* (2006.01)
*A47C 5/00* (2006.01)
*E04B 1/00* (2006.01)
*E06B 9/262* (2006.01)

(52) **U.S. Cl.**
CPC .............. *E04B 1/00* (2013.01); *E04B 2/7405* (2013.01); *E04B 2/7433* (2013.01); *E06B 9/262* (2013.01)

(58) **Field of Classification Search**
USPC ..... 160/84.05, 351, 135, 113, 114; 410/154; 428/116, 118, 178; 52/793.1, 793.11, 28, 52/DIG. 28; 156/197; 362/352, 353; 297/440.14
See application file for complete search history.

(56) **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,346,824 A | 4/1944 | Cohen | |
| 3,170,831 A | 2/1965 | Paige | |
| 3,502,113 A | 3/1970 | Bjorksten | |
| 3,975,882 A | 8/1976 | Walter | |
| 4,052,828 A | 10/1977 | Mancini et al. | |
| 4,209,162 A | 6/1980 | Petiau | |
| 4,247,583 A | 1/1981 | Roy | |
| 4,671,334 A | 6/1987 | Yadegar et al. | |
| 4,677,012 A | 6/1987 | Anderson | |
| 4,694,144 A | 9/1987 | Delaroche et al. | |
| 4,733,711 A | 3/1988 | Schon | |
| 4,934,434 A | 6/1990 | Schnebly et al. | |
| 4,970,831 A | 11/1990 | Rota | |
| 5,078,195 A | 1/1992 | Schon | |
| 5,111,866 A | 5/1992 | Prostko | |
| 5,193,601 A | 3/1993 | Corey et al. | |
| 5,314,226 A | 5/1994 | Tovar | |
| 5,373,916 A | 12/1994 | Kiviniemi et al. | |
| 5,406,760 A | 4/1995 | Edwards | |
| 5,690,778 A | 11/1997 | Swiszcz et al. | |
| 5,903,992 A | 5/1999 | Eisenberg | |
| 6,019,864 A | 2/2000 | Jones | |
| 6,283,191 B1 | 9/2001 | Lo | |
| 6,427,409 B2 | 8/2002 | Colson et al. | |
| 6,431,936 B1 | 8/2002 | Kiribuchi | |
| 6,527,895 B1 | 3/2003 | Palmer | |
| 6,755,453 B2 | 6/2004 | Kellas | |
| 6,764,200 B1 | 7/2004 | Wu Liu | |
| 6,959,752 B2 | 11/2005 | Huang | |
| 7,866,366 B2 * | 1/2011 | MacAllen | A47C 4/04 108/157.14 |
| 8,561,666 B2 * | 10/2013 | MacAllen | A47C 4/04 108/157.14 |
| 9,243,403 B2 * | 1/2016 | MacAllen | A47C 4/04 |
| 9,290,935 B2 * | 3/2016 | MacAllen | A47C 4/04 |
| 9,309,668 B2 * | 4/2016 | MacAllen | A47C 4/04 |
| 9,394,686 B2 * | 7/2016 | MacAllen | A47C 4/04 |
| 2001/0009179 A1 | 7/2001 | Huang | |
| 2002/0043346 A1 | 4/2002 | Zorbas | |
| 2002/0179558 A1 | 12/2002 | Venegas | |
| 2003/0156426 A1 | 8/2003 | Givoletti | |
| 2005/0008826 A1 | 1/2005 | Snel | |
| 2005/0039363 A1 | 2/2005 | Galey | |
| 2005/0076552 A1 | 4/2005 | Tolina et al. | |
| 2005/0162850 A1 | 7/2005 | Luk et al. | |
| 2006/0082987 A1 | 4/2006 | Dorsey et al. | |
| 2006/0260231 A1 | 11/2006 | MacAllen et al. | |
| 2009/0189419 A1 | 7/2009 | Wu et al. | |
| 2014/0096917 A1 | 4/2014 | MacAllen et al. | |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 2517579 A1 | 7/1976 |
| DE | 202008002395 U1 | 5/2008 |
| EP | 1811095 A2 | 7/2007 |
| WO | 2005056899 | 6/2005 |
| WO | 2007048951 | 5/2007 |
| WO | 2008144537 | 11/2008 |

### OTHER PUBLICATIONS

Dempster, Victoria; PCT International Search Report PCT/CA2009/001903; search completed Apr. 19, 2010.
"Acknowledegtment of receipt of observations by third parties (Art. 115 EPC); issued in corresponding EP Patent Application No. EP09833988; dated Jun. 15, 2011."
"Petrinja, Etiel; Supplemental European Search Report from corresponding EP application No. EP09833988; search completed Feb. 20, 2014."
"http://www.balkanyug.bg/new/index.php?page=shop.browse&category_id=103&option=com_virtuemart&Itemid=4—products of Balcan Yug OOD from Haskovo, Bulgaria; retrieved from the Internet May 1, 2013."
"http://www.lessocenter.com/products-49.html—products of Lesoncentar OOD, Trojan, Bulgaria; retrieved from the Internet May 1, 2013."
"http://kori-vrati.g-m.bg/—products of G&M from Varna, Bulgaria; retrieved from the Internet May 1, 2013."
"Timmyvirus111; ""Flexible Love"" Folding Chair; http://www.youtube.com/watch?v=LbEEXMIhZR0; retrieved from the Internet May 1, 2013."
"Rushtang72; Paper Sofa Folding Chair Carton Furniture; http://www.youtube.com/watch?v=8s5cWX6QyBs; retrieved from the Internet May 1, 2013."
"Paparazzia; Folding Chair; http://www.youtube.com/watch?v=t9dNbQCHfMc; retrieved from the Internet May 1, 2013."
"ONETWO easy-2-do event furniture; Product Catalogue 2005."

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG 4



(a)



(b)

FIG 5



FIG 6



**FIG 7**



**FIG 8**



FIG 9



FIG. 10

U.S. Patent    Jun. 27, 2017    Sheet 8 of 41    US 9,689,161 B2



FIG. 11



FIG. 12



FIG. 13



FIG. 14



FIG. 15



FIG. 16



FIG. 17



Fig. 18



FIG. 19



FIG. 20



FIG. 21                    FIG. 22



FIG. 23

FIG. 24



FIG. 25



Fig. 26



Fig. 27



Fig. 28



Fig. 29



FIG 30



FIG 31



FIG 32



FIG 33



FIG. 34



FIG 35



FIG 36



FIG 37



FIG 38



FIG. 39



FIG. 40



FIG. 41



FIG. 42



FIG. 43



FIG. 44



FIG. 45



FIG. 46



600

14

410

602

FIG 47

410

30

600

600    600    600

602

602    602

FIG 48



FIG 49



FIG 50



FIG 51



FIG 52

FIG 53



FIG 54



FIG 55

U.S. Patent          Jun. 27, 2017          Sheet 37 of 41          US 9,689,161 B2



FIG 56

FIG 57

FIG 58



(a)                                        (b)

FIG. 59



(a)                                        (b)

FIG. 60



FIG 61



FIG. 62



FIG. 63



Fig. 64

US 9,689,161 B2

1

# FLEXIBLE FURNITURE SYSTEM

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 14/698,262 filed on Apr. 28, 2015, which is a continuation of U.S. patent application Ser. No. 14/638,704 filed on Mar. 4, 2015, which is a continuation of U.S. patent application Ser. No. 14/042,857 filed Oct. 1, 2013, which is a continuation of U.S. patent application Ser. No. 12/646, 822 filed Dec. 23, 2009, which is a continuation-in-part of U.S. patent application Ser. No. 12/343,042 filed Dec. 23, 2008, which is a continuation-in-part of U.S. patent application Ser. No. 11/742,984 filed on May 1, 2007, which is a continuation-in-part of U.S. patent application Ser. No. 11/287,195 filed on Nov. 28, 2005, which claims priority from Canadian Patent Application No. 2,527,927 filed on Nov. 25, 2005 and U.S. Provisional Application No. 60/681, 972 filed on May 18, 2005, all of which are incorporated herein by reference.

## FIELD OF THE INVENTION

The present invention relates to flexible furniture components and methods of making such components.

## DESCRIPTION OF THE PRIOR ART

Furniture is a staple product used in domestic, working and public environments. Furniture may be used to facilitate the use of space, such as in a seat or table, or to divide space, such as in a partition. By way of example, partitions are frequently used to subdivide spaces, or to create more intimate spaces. Typically such partitions are rigid, or have rigid frames, or are formed from rigid interconnected panels and they are relatively large, heavy, and cumbersome, and therefore difficult to set-up, take down, store, and transport. Similarly other items of furniture, such as seating structures, are typically of a rigid, or permanent nature that, at most, are moveable to alternative locations.

Moreover, the inherent rigidity of such items of furniture limits the extent to which they can be dynamically resized (extended or contracted) and reshaped to suit varying spaces and requirements, or readily moved around for relocation, or storage.

Additionally, such furniture items, particularly in the form of partitions are typically formed from opaque panels which inhibit the transmission of light, therefore necessitating increased use of, or rearrangement of artificial lighting to restore adequate lighting levels.

In domestic, working, and public environments it is frequently desirable to be able to subdivide and reshape space on a temporary basis. For example, visitors may require a temporary sitting or sleeping area, office workers may need to convert an open plan area into subdivided working space or temporary meeting space, trade show participants may need to demarcate a temporary display area, and designers may need to create and shape a temporary area for an event, or a backdrop for a designed area, such as in a window display in a retail setting, in a show-room, or in a theatrical setting. For these types of applications, furniture components that are rigid, heavy, and/or cumbersome may be costly to transport, difficult to set up/take down, and may require significant storage space. Furniture in the form of a partition that is rigid will also place significant constraints on the ways in which a given

2

space can be partitioned, limiting its functionality, and a partition that is fully opaque will severely disturb natural lighting.

The above disadvantages are herein recognized.

## SUMMARY OF THE INVENTION

According therefore to one aspect of the present invention there is provided an article of furniture having a core formed from a plurality of laminar panels of a flexible flaccid material. Each panel has a pair of oppositely-directed major faces with faces of adjacent panels being inter-connected to provide a cellular structure upon movement of the faces away from each other. A respective one of a pair of supports is provided at opposite ends of the core and connected to respective ones of the faces. The supports are self-supporting to provide rigidity to the article of furniture and/or to provide connectivity between like articles of furniture. In this way, the supports may be moved apart to expand the cellular structure and extend the overall length of the article of furniture, and/or be used to connect any of more than one of such articles together in series.

## BRIEF DESCRIPTION OF THE DRAWINGS

Embodiments of the invention will now be described by way of example only with reference to the accompanying drawings in which:

FIG. **1** is a front perspective view of a partition;

FIG. **2** is a perspective view showing three of the panels used to form the partition of FIG. 1;

FIG. **3** is a view on the line III-III of FIG. 1;

FIG. **4** is a series of views showing the sequential operations required to erect the panel of FIG. 1;

FIG. **5** is a detailed view of the portion shown in circle A in FIG. 4;

FIG. **6** is a view showing the sequential steps to join a pair of panels shown in FIG. 1 end-to-end;

FIG. **7** is a detailed view of the inter-connection of the panels shown in FIG. 6;

FIG. **8** is a top perspective view showing the arrangement of a panel within a living area;

FIG. **9** is a top perspective view showing an alternative configuration of panel;

FIG. **10** is a schematic representation of an alternative embodiment of connection applied to a partition;

FIG. **11** is a view on the line XI-XI of FIG. 10;

FIG. **12** is a view in the direction of arrow XII of FIG. 11;

FIG. **13** is a schematic diagram showing the arrangement of the connection of FIG. 10 with different size partitions;

FIG. **14** is a top perspective view of a seat arrangement incorporating the connection of FIG. 10;

FIG. **15** is a view on the line XV-XV of FIG. 14;

FIG. **16** is a front elevation of a light incorporating a connection similar to FIG. 10;

FIG. **17** is a section on the line XVII-XVII of FIG. 16;

FIG. **18** is a schematic representation of a method of manufacturing a light similar to that of FIGS. 16 and 17;

FIG. **19** is a prospective view of a further embodiment of a partition;

FIG. **20** is a view on the line XX-XX of FIG. 19;

FIG. **21** is a end view of the partition shown in FIG. 19;

FIG. **22** is a view similar to FIG. 21 of the opposite end of the partition of FIG. 19;

FIG. **23** is an enlarged detailed view of a portion of the end wall of the partition shown in FIG. 22;

US 9,689,161 B2

3

FIG. **24** is an alternative embodiment of the arrangement shown in FIG. **23**;

FIG. **25** is an enlarged view of the end of the partition shown in FIG. **21**;

FIG. **26** is a view similar to FIG. **25** with the end wall of the partition closed;

FIG. **27** is a plan view of FIG. **26**;

FIG. **28** is a section on the line XXVIII-XXVIII of FIG. **26**;

FIG. **29** is an enlarged view showing a portion of the end wall of FIG. **26**;

FIG. **30** is a perspective view of an alternative embodiment of partition;

FIG. **31** is a view similar to FIG. **30** showing the assembly of the components of the partition of FIG. **30**;

FIG. **32** is a view on the line A/A of FIG. **31** when assembled;

FIG. **33** is a perspective view of a building using partitions as shown in FIG. **31**;

FIG. **34** is a perspective view of a further building utilizing the partitions as shown in FIG. **31**;

FIG. **35** is a schematic representation of an alternative embodiment to the partition shown in FIG. **31**;

FIG. **36** is a further configuration of partition;

FIG. **37** is a view of the partition shown in FIG. **36** in alternative configurations;

FIG. **38** is a view similar to FIG. **36** with an alternative configuration of voids;

FIG. **39** is a view of a partition similar to FIG. **30** deployed in a circular configuration as a light fixture;

FIG. **40** is a view of a partition used as a light fixture;

FIG. **41** is a view similar to FIG. **31** showing an alternative form of support;

FIG. **42** is a view similar to FIG. **1** in an assembled configuration;

FIG. **43** is a perspective view showing the attachment of supports to one another;

FIG. **44** is a view on the line B/B of FIG. **43** when assembled;

FIG. **45** is a view similar to FIG. **43** in a circular configuration;

FIG. **46** is a perspective view of an alternative form of support for a partition;

FIG. **47** is a view on the line C/C of FIG. **46**;

FIG. **48** is a schematic representation of the deployment of the supports shown in FIG. **45**;

FIG. **49** is a schematic representation of an alternative configuration of the supports shown in FIG. **48**;

FIG. **50** is a further alternative configuration of supports shown in FIG. **48**;

FIG. **51** is a side view of a assembly of partition with a portion removed for clarity to show a connector;

FIG. **52** is an exploded perspective view of a connector used in FIG. **51**;

FIG. **53** is an alternative embodiment of the connector shown in FIG. **52**;

FIG. **54** is a perspective view showing the deployment of the connector shown in FIG. **52**;

FIG. **55** is a perspective view showing the assembly of partitions using the connector shown in FIG. **52**;

FIG. **56** is a front elevation of a partition with an additional support provided;

FIG. **57** is a section on the line D/D of FIG. **55**;

FIG. **58** is a view showing the partitions stacked and supported by the support of FIG. **55**;

FIG. **59** is a view showing the use of a support to secure partitions to a fixed abutment;

4

FIG. **60** is a view similar to FIG. **9** with an alternative form of partition;

FIG. **61** is a perspective view showing an alternative form of support for the partitions;

FIG. **62** is a perspective view of a partition with an alternative disposition of lighting elements;

FIG. **63** is a view similar to FIG. **34** of an alternative form of temporary building; and

FIG. **64** is a view similar to FIG. **63** of an alternative embodiment of building.

## DETAILED DESCRIPTION OF THE INVENTION

Referring therefore to FIG. **1**, a partition **10** comprises a core **12** and a pair of supports **14**, **16** at opposite ends of the core **12**. As can best be seen from FIGS. **2** and **3**, the core **12** is formed from a plurality of panels **18**. The panels **18** each have a pair of oppositely-directed major faces **19**, **20**, and are formed from a flexible flaccid material. In the preferred embodiment, the material forming the panels **18** is standard white, flame retardant tissue paper, having a weight of approximately 13.5 lbs (500 sheets @ 24"×36"=13.5 lbs). Each panel has a major dimension or height h and a width w which may be adjusted to suit particular environments. Typically the height will be in the order of 1-2 meters but could range from 0.5-3 meters when used as a partition, or 0.1 meters to 0.5 meters when used as a seat. A seat height of 0.45 m has been found particularly beneficial. The width is typically in the order of 30 centimeters but could range from 10-100 centimeters. Adjacent panels **18** are interconnected to one another at spaced intervals that alternate across the width of the face of the panel **18**. As indicated in FIG. **2**, the connection between panels **18***a* and **18***b* is through a series of parallel, laterally-spaced strips **24** on the face **19** of panel **18***b*. The strips **24** are defined by stripes of adhesive, which connects the panels **18***a*, **18***b* to one another, as shown in FIG. **3**.

Similarly, the inter-connection between a panel **18***b* and **18***c* is through spaced parallel strips **28** on the face **19** of panel **18***c* which are offset from the strips **24**. Each of the panels **18** is therefore alternately connected to the panel **18** on opposite sides so that, as shown in FIG. **3**, upon extension of the panel in a horizontal direction, a cellular structure having voids **30** is formed within the core. The voids **30** extend vertically from top to bottom of the core **12** with the panels **18** providing a continuous transverse barrier. The lateral outer ends of each of the panels **18** are connected so as to form vertical pleats on the exterior faces of the core **12**.

An end panel **18***d* of the core is connected to respective ones of the supports **14** and **16** over its entire width. The supports **14** and **16** are made from a self-supporting material, typically a non woven felt material, which has a degree of flexibility but also has sufficient rigidity to resist collapse of the core **12**. In a typical application, the felt is a 1.95 nominal pounds per square yard felt having a thickness in the order of 3 millimeters, although other weights and thicknesses may be utilized as appropriate depending upon the overall dimensions of the partition **10**. The supports **14** and **16** extend laterally beyond the core as indicated at **32** and are adhered to respective ones of the end panels **18***d*.

Fasteners in the form of a pair of loop and hook strips **34**, such as that sold under the trade name "Velcro" are stitched to the felt supports **14** and **16**, and extend vertically from one end to the other.

The core **12** is collapsible so that the major faces of adjacent panels **18** lay parallel to one another and in abut-

US 9,689,161 B2

5

ment. In this position, as shown in FIG. 4a, the partition 10 may be stored in a flat, collapsed position. When the partition 10 is required, it can be oriented vertically (FIG. 4b) and the opposite supports 14 and 16 used to manipulate the partition. The supports 14 and 16 are moved away from one another as shown in FIG. 4c to expand the core so that the cellular structure is opened within the core 12. The lateral extension of the supports 14, 16 beyond the core 12 provides marginal tabs that may be grasped to facilitate manipulation of the core without direct contact with the panels 18.

Once partially extended, the supports 14 and 16 may be folded along a vertical axis to provide enhanced rigidity at each end of the partition 12. This may be seen in more detail in FIG. 5 where it will be seen that the opposite edges of the supports 14 and 16 may be brought together so that the loop and hook strips 34 are brought into abutment. The loop and hook strips 34 engage one another and thus hold the support in a folded tubular configuration. This movement is accommodated by the flexible nature of the cellular structure which expands towards the lateral edges to accommodate the folding of the supports 14 and 16. With the supports 14 and 16 folded into a tubular support, extension of the core 12 continues as shown in view (e) of FIG. 4, until the desired overall length is reached.

With the partition 10 expanded, it has sufficient width to remain stable in a vertical position with the rigidity provided by the end supports 14 and 16. The material forming the panels 18 is preferably translucent so that a pleasing transmission of light through the panel may occur, while still providing a degree of privacy.

The extended partition as shown in FIG. 4e may be adjusted to different configurations as illustrated by the open curve shown in FIG. 1 and the wrapped curve shown in FIG. 8. The core 12 has a surprising degree of flexibility to accommodate different configurations and allow an appropriate shaped and sized partition to be installed in an otherwise open space. By varying the overall dimensions, additional functionality may be obtained. The extended partition shown in FIG. 4e may also be made with a lower height, for example 1 meter and a wider base, for example 0.5 meters so that the top surface of the partition may be used as an area to display objects. Such an arrangement is illustrated in FIG. 9. Where appropriate, the terminal portions of the voids 30 may be used as a pocket to support a container, such as a vase, or similar object. In this embodiment, the height would be between 0.5 and 1.5 meters.

The provision of the supports 14 and 16 also permits a pair of partitions 10 to be joined end-to-end as shown in FIG. 6. As may be seen from FIG. 6a, a pair of partitions 10 is erected and positioned with supports 14, 16 at opposite ends of each partition adjacent one another. The loop and hook strips 34 in adjacent supports 14, 16 are then brought into contact with one another as shown in FIG. 7 so that the partitions 10 are joined in seriatim. The additional thickness provided by the double support at the intersection enhances rigidity, with the supports 14, 16, at the free ends of the partition being folded upon themselves to provide stable support.

After use of the partition 10, it is simply necessary to reverse the procedure by moving the ends towards one another, unfolding the supports 14 and 16, and collapsing the core 12 to its minimum size. It may then be stored and used when subsequently required.

In the above embodiments, the core has been made from a light weight paper material, although it will be apparent that alternative materials may be used that fulfil the same

6

functional requirements. For example, it is possible to utilize a heavier weight paper material, such as Kraft paper, or a non-woven textile material such as a plastic material known as Tyvek from DuPont which is both tear and water resistant. Alternatively, a paper laminated with a plastic film to provide a composite material may be used. With such a core material, the supports 14 may be made of a felt or may be made from a material similar to the core material but with increased thickness. The felt used in the support would be sufficiently flexible to allow folding to define the tubular support structure at each end with fasteners such as the loop and hook strips 34 incorporated on the support. In some applications, the inherent stiffness of the material used in the core is such as to provide sufficient rigidity to the core when the cellular structure is expanded for the core to be self supporting when expanded. Kraft paper or plastics material has provided sufficient rigidity for this purpose. In this case the supports may be provided to permit connectivity if multiple units are to be joined end to end.

Whilst a translucent material is preferred, it will be apparent that opaque or different coloured materials may also be utilized. The dimensions of the void 30 and the number of voids in the lateral direction may be adjusted to suit particular applications. It has been found in practise that a spacing between stripes 24, 28 in the order of 5-10 centimeters (when unexpanded) is appropriate, although spacing as low as 1 cm. may be used, and that the width of the stripes 24, 28 is between 1 and 10 millimeters. This arrangement provides a flexible structure with extensive elongation to provide maximum functionality.

An alternative form of connection for articles of flexible furniture is shown in FIG. 10-12, in which like reference numerals will be used to denote like components with a prefix 1 added for clarity. In the embodiment of FIG. 10, a pair of partitions 110 are arranged to be joined end-to-end in a manner similar to that shown in FIG. 6. The end panel 118d of the core 112 is secured to supports 114, 116. The supports 114, 116 are made from a self-supporting material, which in this embodiment are preferably made from a rigid material such as a millboard. The supports 114, 116 lay within the periphery of the end panel 118d so that the end panels 118d overlap by a margin in the order of 20 millimeters around the millboard.

Each of the supports 114, 116 has a series of holes 140, best seen in FIG. 11 formed through the millboard. The holes are arranged in a regular pattern, as will be described more fully below with respect to FIG. 13, and are arranged to receive rare earth magnets 142. The magnets 142 are typically in the order of 3 millimeters thick and 25 millimeters diameter. The magnets are a tight sliding fit in the holes 140 so as to be frictionally retained by the millboard. The millboard itself is chosen to be of the same thickness as the magnet 142 so that the face of the magnet 142 is flush with the surface of the millboard.

The magnets 142 are oriented such that a common polarity is present for all magnets on one face. Thus the magnets in the support 114 shown in FIG. 10 are oriented such that the north pole is exposed and those of the support 116 in the adjacent partition 110 are arranged such that a south pole is exposed. The exposed end face of the millboard is wrapped by a cover 144 of the same material as used to produce the core 112 for aesthetic purposes and to retain the magnets in situ. The cover 144 extends over the edges and each face of the millboard to provide self contained end supports 114, 116 to facilitate manufacture as well as enhance the aesthetics.

US 9,689,161 B2

7

With the magnets in situ, the partitions **110** may be connected to one another by relying upon the magnetic attraction between the opposite poles of adjacent partition. The rare earth magnets **142** have sufficient force to retain the supports **114**, **116** in abutment with one another. However the supports may be readily separated by sliding the partitions relative to one another or pulling them apart axially to release the magnets. The margin of the end panel **118***d* provides a flexible tab to permit manipulation of the core **112**.

As can be seen in FIG. **13**, the arrangement of magnets **142** on the support **114**, **116** provides a grid that allows different size partitions to be connected in seriatim. The magnets **142** are arranged in two columns in rows uniformly spaced such that a relatively tall partition may be attached to a relatively small partition with the magnets **142** in alignment. The grid also allows partitions to be stacked on top of one another and connected in seriatim to a taller partition to form a continuous wall.

Whilst it is convenient that the supports **114**, **116** are formed from rigid millboard to carry the magnets, it will also be apparent that a similar arrangement may be achieved using the self-supporting flexible supports **114**, **116** such as the felt shown in the embodiments of FIGS. **1** through **9**. The end panel **118***d* and the covering panel **144** secures the magnets **142** within the flexible support **114**, **116** so as to be retained within the hole **140**. This arrangement would also allow the end panels to be folded as shown in FIG. **5** provided that the orientation of the magnets is such that one column has a north polarity and the other column has a south polarity. A complimentary arrangement on the support of an adjacent partition will still permit the partitions to be joined to one another in seriatim as well as folded.

The embodiments are described above in the context of a partition. However, the ability to dimensionally resize the core **12** provides for its use in alternative articles of flexible furniture, such as those shown in FIGS. **14** through **17**. In the embodiment of FIG. **14**, a circular seat **210** is provided having a concave upper surface **211**. As seen in FIG. **15**, the lower surface **213** of the core **212** is planar to sit against the floor and the upper and side surfaces smoothly curved. The opposite end faces **218***d* of the core are secured to supports **214**, **216** that carry a series of magnets **242**. The magnets are wrapped by a cover **244** of the material used to form the core to provide a pleasing aesthetic as well as secure the magnets **242** within the supports **214**, **216**. The seat **210** may be stored in a collapsed flat position and when needed expanded into a circular array with the supports **214**, **216** in abutment. The magnets **242** secure the supports **214**, **216** to one another and hold the core **212** in the circular configuration presenting an upper concave surface **211**. For storage, the supports are separated and the core collapsed to a flat configuration.

As shown in FIG. **14**, the seat **210** is formed from three cores **212** joined end to end to make a torous. It will be apparent that the overall diameter of the seat **210** may be increased by expanding the inner diameter of the torous and thereby further expanding the cores **212**. Alternatively, a single core **212** may be used with the supports **214**,**216** connected to one another, provided there are sufficient laminated panels to permit extension of the core over the required circumference. In this case, the diameter will be similar to that shown in FIG. **14**.

A simple seat may be provided in a similar manner by having an expanded core **212** with a planar upper surface **211**, arranged either in a cylindrical form with supports **214**, **216** in abutment, or in the form of a bench with said supports

8

not in abutment. In each case, multiple units may be joined end to end to increase the diameter of the cylindrical seat, or the length of the bench, which can be arranged linearly, or in an undulating manner, and which can act as a form of partition, as shown in FIGS. **1** to **9**, and may be stacked one on top of the other to increase the overall height.

When used in a seating embodiment, the dimensions of the cellular structure and the stiffness of the material used is adjusted to provide an increased structural rigidity and increased weight bearing capacity. Kraft paper has been found to have the requisite properties and it has been found preferable to reduce the spacing between the glue stripes to 2.5 cm so that the maximum dimension of each void **30** in a collapsed state is 5 cm.

A similar arrangement of flexible furniture is used with respect to a light as shown in FIGS. **16** and **17** in which like reference numerals will be used to denote like components with a prefix **3** for clarity. In the embodiments of FIGS. **16** and **17**, a light **310** is formed with a core **312** with end panels **318***d* secured to respective supports **314**, **316**. In this arrangement the axis of the voids is radial although an axial orientation may be used if preferred. The supports, as shown in FIG. **17**, carry an array of magnets **342** so that the supports may be joined to one another as described above. A bulb **350** is located within the centre chimney formed by the fanning of the core **312**. The bulb **350** illuminates the core **312** to provide a pleasing effect and the heat may escape through the central aperture provided by the core. Naturally the core is formed from a fire-resistant material, or the light source produces only a small amount of heat. The light **310** may be collapsed and stored in a flat configuration and deployed as required in different locations.

It will be apparent from the various embodiments described above that the provision of the cellular structure to form the core and the releasable fastenings provided at the end panels allow for a variety of configurations to be provided. The provision of the magnets or other fasteners in a pre-defined grid permits different components to be joined to one another to increase a variety of configurations that may be utilized. As indicated above, the dimensions of the core may be adjusted to suit particular requirements, ranging from a single row of voids to provide a thin or narrow partition, to a relatively wide cellular structure with multiple rows of voids to provide seating or table like surfaces. The configuration of the core **312** as shown in FIGS. **14** to **17** facilitates production of articles of different sizes from the same blank of core **312**.

As shown in FIG. **18***a*, the core **312** is die cut to the overall shape of the half section of the light **310** or seat **210**. The centre section of the core may then be removed, as shown in dashed line of FIG. **18***b* to provide a pair of blanks as shown in FIG. **18***c*. Each is used as a blank, with the centre, a smaller, but similar, blank for another light **310** or seat **210**.

The supports **314**, **316**, are secured to end panels **318** and overlap on the radially inner edge to allow manipulation of the core **312** without unduly restricting the inner void defined when the core is deployed in to a circular arrangement. This overlap provides a convenient handle to allow the core to be pulled in to a circular configuration which is particularly beneficial when used on the seat **210**.

A further embodiment of partition is shown in FIGS. **19** through **45** in which similar reference numbers will be used to identify like components for the prefix **4** for clarity. The embodiment of partition shown in FIGS. **19** through **45** may be used in a number of ways to enhance the aesthetic appeal of the partition and to increase its functionality

US 9,689,161 B2

9 10

Referring therefore to FIG. **19**, partition **410** has a core **412** formed from panels of translucent material as particularized above. End supports **416** and **414** are provided in opposite ends of the core **412** and are covered by material **444** for aesthetic purposes.

A series of longitudinal passages **460** extend through the end panels **414**, **416** and the core **412** so as to intersect the cells **430** transverse to their longitudinal axis. Each of the passages **460** is circular in cross section and is located on the center line of the core **412**. The number of passages **460** may vary according to different applications but in the embodiment shown in FIG. **19**, three passages **460** are formed through the core **412** at uniformly spaced intervals.

The passages **460** may be conveniently formed with the core **412** in a collapsed condition by using a paper drill bit or similar device, or die cut. Typically a diameter of 2 inches is appropriate for the passage **460**.

The passages **460** may be used in a number of different ways. As shown in FIGS. **19** to **29**, an LED light ribbon **462** is inserted into one or more of the passages **460** so as to extend through the core **412** to the end support **416**. The LED ribbon **462** is a commercially available system such as that available from Alder under the tradename FlexLight Bars. The LED lights are distributed in uniform fashion along the length of the ribbon **462** and are supplied with power from a transformer unit incorporated into an electrical power supply in a conventional manner. A dimmer control may also be included to vary the intensity of the lights

As can best be seen in FIGS. **20** and **23**, one end of the ribbon **462** is secured relative to the end panel **416** by a foam ball, **464**. The ball **464** is secured to the ribbon **462** after it has been inserted through the passage **460** and prevents the ribbon from being withdrawn. The ball **464** is deformable so as to be a snug fit in the passage **460** and so bears against the walls of the passage **460** to secure the ribbon **462**.

As shown in FIG. **24**, the ribbon **462** may also be secured by a bar **466** that passes through the ribbon but inhibits its removal through the passage **462**.

As shown in FIGS. **25** through **28**, the ribbon **462** may conveniently be concealed by the end panel **414** with the partition installed. The end panel **414** may be folded upon itself, as described above with respect to FIG. **5** to define a vertical panel in which the ribbon **46** can be concealed.

The end panels **414** and **416** carry magnets **442** in a manner similar to that described with respect to FIG. **10**. The magnets **442** are mounted on plastic strips **470** secured to the end panels **414**, **416** and covered by the covering **444**. The magnets **442** are arranged in uniform spacing down each strip and the polarity of the magnets alternated both vertically along the strip and transversely between the two strips. In this manner, folding of the panels **414**, **416** brings magnets of opposite polarity in to contact to secure the end panels in a folded condition and at the same time provides for inversion of successive partitions so that a magnetic connection between adjacent end panels will be obtained, regardless of the orientation of the panel.

In use, the ribbons **462** are inserted into the passages **460** and the ribbons secured by the end fastening in the form of a ball **464** or bar **466**. This is most conveniently accomplished with the core **412** in the collapsed condition. As the partition **410** is expanded to the required length, the ribbon **462** slides within the passage way **460** so that the LED ribbon is uniformly distributed along the extended length of the core **412**. The end panels **414**, **416** are then folded on themselves with the ribbon **462** enclosed within the cavity. The relative sizing between the ribbons and the passage **460**

ensures the ribbon can slide easily along the passage as the partition is expanded without binding or tearing the core **412**.

When energized, the light from the LED is diffused through the core **412** giving a glowing appearance to the core **412**. The intensity of the light may be adjusted by using more than one ribbon in the core **412** or increasing the number of lights for a given length of core. Controls including a dimmer switch may also be used to vary the intensity and may incorporate additional features such as motion sensors that allow the LED's to be switched successively as a person walks past the partition. Different coloured ribbons **462** may also be utilized to vary the visual effect.

The construction of the core **412** and the nature of the material making up the core effectively provides a relatively uniform diffusion of the light through the core, giving a soft glowing effect without high intensity point sources. The LED lights are relatively low heat output and so may be safely incorporated within the core **412** without risk of fire.

In order to store the partition **410**, the end walls **414**, **416** are brought together to collapse the core **412**. As the core **412** is collapsed, the ribbon slides out of the passage **460** so as not to hinder the collapse of the core **412**. The ribbon **462** may either remain fixed within the passage **460** or, if preferred, may be detached and removed from the passage **460** for storage. The placement of the ribbon **462** within the passage **460** allows adjustment of the overall length of the partition **410** with the ribbon **462** conveniently sliding within the passage **460** during extension or collapse of the partition. As such the ribbon **462** does not inhibit the flexibility or placement of the partition in use.

The ribbon **462** may alternatively be formed with a resilient spiral portion, as indicated at **462***a* in FIG. **30**, so as to be extendible and retractable with the partition **410**. The spiral ribbon **462***a* has LED lights at spaced intervals along its length and is inserted into the passage **460** with the partition **410** in a collapsed state. The ribbon **462***a* is secured at one end to one of the end panels **414**, **416** and the other end panel is secured to the opposite end of the spiral portion **462***a*. As the end panels **414**, **416** are moved apart, the spiral portion **462***a* extends whilst retaining a substantively uniform distribution of the LED lights. The spiral portion is designed so as to be extendable to the maximum length of the partition **410** so that the LED lights accommodate the variations in the partition **410** whilst being retained within the partition.

The passages **460** may also be used to provide internal stabilization to the partitions **410** without adversely impacting upon the aesthetic appeal of the partition. In FIG. **31**, a flexible plastics sheet **470** such as mylar is rolled into a tubular insert **472** having an initial diameter slightly less than that of the passage **460**. The tubular insert is inserted into the passage **460** to extend over the required length of the partition. As shown, the insert **472** extends over the whole length of the partition **410**, but it can extend only along selected portions of the partition to provide reinforcement. The plastics material is selected to provide a degree of rigidity in bending so that the insertion of the tube **472** into the passage **460** increases the bending resistance of the partition. This permits the partition **410** to be utilized as a lintel as illustrated in FIG. **32**. The plastics material is selected to be a length corresponding to the length of the partition when in use and may be inserted as the partition is expanded to that length. Once inserted the partition **410** is self supporting and may bridge gaps provided in a wall of partitions **410** as shown in FIG. **33**. Materials other than

US 9,689,161 B2

11

12

mylar may of course be used and in general any flexible material that provides a sufficient degree of rigidity in bending when rolled in to a tube to increase the bending stiffness of the partition.

It is preferred that the material **470** is translucent so as not to be visible within the interior of the partition when in use. The formation of the material **470** into the tube **472** also permits the light ribbon **462** to be inserted down the tube and still provide the illuminating effect referred to above with respect to FIGS. **19** to **29**. Of course tubes **472** may be inserted in to each of the passages **460** if desired, but in practice it is found that a single tube provides sufficient strength. The stabilization of the partition **410** by the tube **472** permits the use of the partition in different environments.

As indicated in FIG. **34**, the partitions **410** may be used to form a cubicle or room, generally indicated at **474**, such as may be required as a temporary structure at a trade show or to provide a degree of privacy within an open area. The cubicle **474** has walls **476** formed from stacked partitions **410**. An aperture **478** is provided on one of the walls **476** by spacing apart the ends of the partitions **410**. The aperture **478** is bridged by a partition **410** containing a tube **472** so that the partition **410** does not sag over the aperture **478**.

A roof structure **480** is formed by individual partitions **410** reinforced with a tube **472** that spans opposite walls **476**. As can be seen in FIG. **34**, the end panels of the partitions **410** used to form the roof structure **480** are folded together to provide a curved end and to hide the passage **460** from view.

As described above with respect to FIGS. **31** to **34**, the tubes **472** extend the full length of the partition **410**. This of course inhibits flexure of the partition **410** along its length. The tubes **472** may extend over only part of the length to provide local reinforcement. Where such flexure is required, for example at a corner or to provide an abrupt change in the direction of the wall, the tubes **472** may be truncated and extend only partially along the length of the passage **460**. This permits, as shown in FIG. **35**, a spacing between the tubes **472** allowing the partition **410** to be bent in that zone. Obviously more than one gap may be provided between the tubes **472** where more complex shapes are required. Moreover, it will be appreciated that the extendibility of the partition allows the individual lengths of tube **470** to be inserted progressively at selected locations along the partition as it is assembled.

The passages **460** described above are relatively small diameter and circular in cross section. The cross section may of course be any convenient size or shape, such as square, rectangular or hexagonal. The size varied to suit the particular application. A similar technique may be utilized to provide larger voids within the partition **410**. In FIG. **36**, an enlarged void of rectangular cross section is formed in the center of a partition **410**. The partition **410** is formed in three portions, end portions **410**a and **410**b and the center portion **410**c. One of the end portions **410**a is provided with a passage **460** that extends through the end portion **410**a to the void **480**. The opposite end portion **410**b does not provide such a passage. The portions **410** a, b and c are joined together permanently as with an adhesive or temporarily as through the use of end panels containing magnets as described above, to provide a substantially continuous partition **410** with a large center void. The void **480** may then be used to accommodate a large lighting system, sound system or other equipment that is hidden from the exterior. For example, the void **480** may include a battery powered audio system whose output is transmitted through the mate-

rial of the partition **410** but is hidden from view as not to effect the aesthetics. The sound system may be operated remotely through wireless control and may be removed from the void **480** by separating the end panel **410**a. Alternatively, power may be provided to the void through the passage **460** for prolonged use of the equipment.

The void **480** may extend fully through the core of partition **410** if required. The end panels **418** may then seal the void **480** or extend around the margin, as shown in FIG. **38** below, to connect to other partitions **410**.

The portion of the core removed for the void **480** may be used in smaller but similar partitions **410** as described above with respect to FIG. **18**.

As shown in FIG. **37**, the LED ribbon **462**a maybe be secured within the void **480** and upon expansion of the partition **410** will provide uniform illumination along the length of the void.

It may also be noted from FIGS. **36** and **37** that a channel **482** is formed in the lower most service in the partition **410**. The channel **482** may be used in a manner similar to the passage **460** to accommodate cables along the length of the partition **410** whilst hiding them from view. In the example provided in FIG. **36** it will also be apparent that the cells of the partition intersect the void **480** and the channel **482** and thereby provide further means of supplying auxiliary services to equipment located in the void **480**. Of course the channel **482** may be provided in partitions even where void **480** is not present.

The void **480** may be located adjacent an end of the partition **410** (see FIG. **38**) and more than one void **480** may be provided. The location of a void **480** adjacent to an end panel facilitates insertion of equipment which allows the panels to be joined end to end to provide a fully contained environment.

The use of the passages **460** is not restricted to linear partitions **410** but may also be utilized in a circular array to provide a light as shown in FIG. **39**. In FIG. **39**, an annular body is formed from one or more partitions in a manner described above with respect to FIG. **15**. A passage **460** is formed in the partition **410** so that when the partition **410** is deployed into a circular format, the passage **460** defines a toroidal passage. A light ribbon or similar visual effect **462** is located within the toroidal passage **460** with power supplied through a cable that extends radially from the central hub to the passage **460**.

Suspension wires **490** are secured to the partition **410** by clips or similar mechanical fasteners.

It will be appreciated that with the toroidal configuration of the passage **460** a uniform distribution of light through the partition **410** is provided to produce a dispersed lighting effect.

The voids **480** may also be used to accommodate structural elements for support of the partition **410** when it is used in an elevated located. FIG. **40** shows a linear partition **410** of an irregular pear-shaped cross section, with a void **480** extending along its longitudinal axis. Support brackets **492** are positioned at spaced locations within the void **480** with support wires **494** extending through the cells of the partition from the supports **492**. These supports **492** may be secured to the partition **410** through mechanical fasteners, such as rivets, engaging the individual panels of the partition **410**. The rods **493** extend between the supports **492** to add stability and inhibit retraction of the partition. If required, because of the span between supports, a support tube **472** may extend through the void **480**, between the support and partition, to increase the beam stiffness of the partition **410**.

US 9,689,161 B2

13

Lights may be secured to the supports **492** to illuminate the void **480**. The partition **410** may also be circular to provide an annular lighting fixture.

It is sometimes desirable to increase the stability of a partition **410** but also have it follow a non linear path. The passages **460** may be utilized together with an articulated rod or tube **500** to provide such a structure. FIG. **41** shows a partition **410** with passages **460**. An articulated rod **500** has a generally tubular cross section and is provided with flexible joints **502** at spaced intervals. The joints **502** may be of known construction and may be as simple as a pirated tongue and groove joints or maybe a ball joint or other friction joint that allows adjustment of the disposition between adjacent sections and yet provides a stable self supporting configuration after adjustment.

The articulated tube **500** is inserted into the passage **460** and the disposition between adjacent sections adjusted to provide the overall configuration of the partition that is required. As shown in FIG. **42** for example, a jogged partition **410** may be provided simply by adjusting two spaced joints **502** through equal and opposite angles. The articulated rod **500** may be inserted linearly if the partition is already expanded and then adjusted once insitu or may be pre-adjusted to the desired configuration and the partition fed along the rod **500**.

The rod **500** may also extend between partitions **410**. It may also connect to similar rods in adjacent partitions to provide a continuous supporting structure. FIG. **43** shows a pair of partitions **410** each with a respective rod **500**. The rod may be articulated as shown in FIG. **41** or may in fact be a single non articulated rod if a linear array is required. The ends of the rods **500** have connectors that allow one rod to be connected to the adjacent rod. These connectors may be of any convenient mechanical or magnetic form but, as shown, are simply a threaded pin **504** and a threaded sleeve **506**. To connect one of the rods **500** to the adjacent rod, the ends of the rods **500** may be exposed by compressing the partition **410** and the pin **504** threaded in to the sleeve **506**. The sleeve **506** may be freely rotatable relative to its rod **500** but axially fixed to facilitate the connection. Once the rods **500** are connected, the partitions may again be extended to cover the connection between the rods and a continuous stabilization of the partitions **410** is provided.

The increased bending stiffness provided by the rod **500** allows the partitions **410** to be suspended from a ceiling or elevated structure by wires connected to the rod **500** if required.

A rod **500** may also be utilized to reinforce configurations other than generally linear arrangements of partition. In FIG. **45**, the rod **500** is formed in to a circular configuration with a coupling **508** to allow a partition **410** to be placed on the circular rod **500**. Once placed on the rod, the coupling **508** may be reconnected and the partition **410** arranged to cover the coupling **508**. The circular rod **500** of FIG. **45** may be preformed as a continuous circle of a given diameter, may be formed from individual sections of a fixed curvature or from an articulated rod having joints **502** spaced along its length as shown in FIG. **41**. The rod **500** does however provide a hoop around which the partition may be arranged to provide a stabilized circular cross section.

The overall configuration of the partition **410** lends itself to being supported in a direction orthogonal to that provided by the passages **460**. Such support may be beneficial where the partition **410** is used as a wall of significant height, for example over three meters where it is formed from stacked partitions, or in an environment where it may be subject to extraneous forces such as the wind or likely to be inadver-

14

tently displaced by a person. As indicated in FIG. **46**, the flexible end panel described above with respect to FIG. **6** maybe be utilized to accommodate a supporting dowel **600**. Dowel **600** is mounted to a base **602** which may be secured to a floor or other mounting point if required. The base **602** is located at the position of the end of the partition **410** and the dowel **600** secured to the base **602** to extend generally vertically. The partition **410** is then expanded and the end panels **14** folded about the dowel and secured to one another by the releasable fastenings, either Velcro or magnetic. The end panels **14** provide a cavity in which the dowel **600** is received and provide stability in a transverse direction for the partition **410**.

Further support may be provided along the length of the partition by utilizing the cells **30** that extend generally vertically when the partition is deployed. Dowels **600** are inserted in to the cells **30** and connected to bases **602** at spaced locations along the desired configuration of the partition **410**. Such an arrangement is shown in FIG. **48** where it can be seen that the dowel **602** and bases **600** are utilized to constrain the partition **410** in to a serpentine path and at the same time provide lateral stability for the partition. No modification to the partition **410** is required to utilize the additional support provided by the dowel **600** and the number of dowels and their location may be adjusted to suit the particular requirements.

As further modification, the bases **602** may be interconnected by links **604** illustrated in FIG. **49** to provide a more unitary constrained structure to the partition **410**. The dowels **600** are accommodated again either in vertical cells or by being wrapped by the end panels **30** with the spacing between the dowels **600** determined by the links **604**.

In some circumstances, the dowels may be inserted from the upper surface of the wall to provide enhanced lateral stability for the wall without the necessity or securing the dowels and bases to the floor. Such an arrangement in shown in FIG. **50** where the bases **602** locate the dowels vertically from above with the dowels providing stabilization for the partition **410**.

This permits the bases **602** to be secured to a ceiling rather than the floor, where the partition extends the full height.

The insertion of the dowels from above also allows a wall, formed from stacked blocks, to be stabilized after it has been arranged and also LED's to be fixed to the dowel and inserted in to the partitions.

As illustrated in FIGS. **33** and **34**, and referred to above, the partition **410** may be stacked one above the other to increase the height and the structure by the partitions. Advantages taken of the cellular structure of the partition **410** to provide a connection between the abutting partitions without inhibiting the flexibility of the partitions **410** themselves. Referring therefore to FIG. **51**, a pair of partitions **410** are stacked one above the other to provide a wall. The cell **30** extends vertically through the wall and a connector **700** utilizes the cells to provide a connection that inhibits lateral and longitudinal movement between the partitions. The connector **700** comprises a pin **702** that is received snugly in a hole **704** formed in an angular disc **706**. The diameter of the disc **706** is greater than the nominal size of the cell **30**, so that the pins **702** may be inserted in to a cell on the top of one of the partitions and the disc **706** overlies the walls of the cells to limit the movement of the pin **702**. The partition **410** may then be inserted from above, as indicated in FIG. **55**, with the upper portion of the pin **702** received in a cell **30** exposed at the lower surface of the upper partition **410**. The pin **702** thus bridges the two partitions **410** and is received a cell of each so as to limit the

US 9,689,161 B2

15                                                          16

relative longitudinal and lateral movements between the partitions. At the same time, the point connection still allows adjustment between the partitions and other locations so that sculpted forms can be provided by the stacked partitions.

Alternatively, as shown in FIG. **53**, the connector **700** can be formed from a pair of pins **702** with magnetic inserts **708** in one end. The magnets are attracted to the discs **706** and to each other to form the connector **700**.

The provision of the end panel **412** with magnets or with other releasable fasteners also lends itself to the use of additional stabilizers in the vertical direction. FIG. **56** shows an end panel **414** having magnets **442** embedded in the panel. A thin plate **800** of magnetic material, such as a carbon steel, is secured by the magnets **442** to the end panel **414**. The plate **800** has significant stiffness in bending and its thin form allows it to be accommodated between the abutting faces of panel **414** when folded as shown in FIG. **58**. The strip **800** enhances the rigidity of the end panels. The panel **800** may extend vertically from one partition **410** to another so as to bridge the two panels. Again this enhances the lateral connection between the partition allowing the partition to be stacked one above the other whilst retaining a unitary nature. Whilst the strip **800** may be utilized in free standing units **57**, it may also be used to allow the partitions **410** to be connected to an existing wall or similar structure.

As shown in FIG. **59**, a strip **800** is secured to a wall to which partitions **410** are to be connected. The end faces **414** of the partitions **410** are brought in to engagement with the strip **800** and the magnets or other fasteners secure the end panels of the partitions **410** to the strip and therefore to the wall. The strip **800** may provide a continuous connection for a plurality of partitions as shown in FIG. **59** or for a single tall partition as shown in FIG. **60**. The fastenings are, of course, releasable allowing the partitions to be removed from the wall and the strip **800** may be left permanently attached without being unduly obtrusive.

An alternative form of vertical support for a wall formed from multiple partitions **410** is shown in FIG. **61**. Support wires **900** extend from a fixed location, such as a ceiling, to bases **902** or fixture points on a floor. The support wires **900** extend through the cells **30** of the partitions **410** and thereby provide lateral stability for the overall assembly while still allowing individual adjustment of the partitions to provide a sculptured effect. The cellular structure allows the wires **900** to be secured at a variety of locations along the length of the partitions **410** to accommodate different configurations. The wires could terminate prior to the floor to provide a suspended wall.

The vertical cells **30** on the partition **410** may also be used in place of the passages **460** to accommodate a light ribbon **462** as illustrated in FIG. **62**. The light ribbon is fed vertically through the cells **30** in a serpentine manner and at each end of the vertical run is displaced axially to an adjacent cell. Preferably, the longitudinal run of the ribbon **462** is accommodated in a channel running on the upper and lower surfaces so that a flush surface is provided for the partition **410**.

As shown in FIG. **63**, advantage may be taken of the expandability of the partitions **410** to provide a building of variable dimensions. As shown in FIG. **63**, the partitions **410** are stacked one above the other to form walls and similar partitions **410** are laid between the walls to provide a roof. Strengthening ribbons indicated at **950** are inserted between the partitions in the roof to provide support for the partitions when spanning the walls. The cells **30** are orientated within the partitions so that each of the partitions collapses along the same axis. Thus the partitions **410** forming the walls, are

oriented to collapse in the direction of arrow X and the partitions in the roof are dimensioned to collapse in the direction of arrow Y parallel to arrow X. In this way, the building may be stored in a collapsed configuration with minimum foot print and may be deployed by extending in the direction the arrows X and Y to provide an enlarged building.

The localised reinforcements of ribs may also be used to form a unitary structure with roof and walls as shown in FIG. **64**. Integral U shape arches **770** are interspersed in between a core **410** that may expand or retract along the axis indicated by arrow X. The walls and roof are cut out of a single core **410** and connected to the arches by adhesive or magnets. The arches **770** may be made to be readily disassembled for ease of transportation by, for example, latches, bolts or other fasteners.

It will be apparent from the various embodiments described above that the provision of the cellular structure to form the core and the releasable fastenings provided at the end panels allow for a variety of configurations to be provided. The provision of the magnets or other fasteners in a pre-defined grid permits different components to be joined to one another to increase a variety of configurations that may be utilized. As indicated above, the dimensions of the core may be adjusted to suit particular requirements, ranging from a single row of voids to provide a thin or narrow partition, to a relatively wide cellular structure with multiple rows of voids to provide seating or table like surfaces. The provision of internal passages allows the localised reinforcement and the provisioning of lighting and visual effects to enhance the versatility.

Although the invention has been described with reference to certain specific embodiments, various modifications thereof will be apparent to those skilled in the art without departing from the spirit and scope of the invention as outlined in the claims appended hereto. The entire disclosures of all references recited above are incorporated herein by reference.

What is claimed is:

**1**. An assembly of walls for partitioning an area of a room, the assembly comprising:

at least a first freestanding extensible wall and a second freestanding extensible wall, each one of said first and said second walls having a base, a top, oppositely directed surfaces extending between said base and said top, said base, top and surfaces defining a core, said core comprising a cellular structure having multiple voids extending from said base to said top upon movement of said oppositely directed surfaces away from each other, said base having a width of at least 10 centimeters and placed on a floor, and said core having a height of at least 1 meter, whereby opposite ends of said core may be moved apart to expand said cellular structure and extend the length of said core and to form at least a substantially straight freestanding wall configuration, whilst maintaining its vertical extent; and

said first and said second walls are arranged in seriatim with an opposite end of said first wall adjacent to and in abutment with an opposite end of said second wall, and at least one fastener is positioned at said opposite end of said first wall and at said opposite end of said second wall to releasably secure said opposite ends to one another.

**2**. A method for partitioning an area of a room, the method comprising:

positioning an extensible wall in the area of said room, said wall having a base, a top, oppositely directed

US 9,689,161 B2

17

surfaces extending between said base and said top, said base, top and surfaces defining a core, said core comprising a cellular structure having multiple voids extending from said base to said top upon movement of said oppositely directed surfaces away from each other, said base having a width of at least 10 centimeters and said core having a height of at least 1 meter;

placing said base on a floor of said room, and

moving opposite ends of said core apart to expand said cellular structure and extend the length of said core and to form at least a substantially straight freestanding wall configuration, whilst maintaining its vertical extent.

**3**. The method according to claim **2** wherein said wall further comprises at least one fastener positioned at each of the opposite ends to permit connection to an adjacent opposite end of another similar article.

**4**. The method according to claim **2** wherein said opposite ends of said core are flexible and are in a tubular configuration about an axis parallel to said major faces.

**5**. The method according to claim **4** wherein said wall further comprises at least one fastener positioned at each of said opposite supporting ends to maintain said tubular configuration.

**6**. The method according to claim **2** wherein said cellular structure defines a plurality of parallel voids oriented on the longitudinal axis of said panels.

**7**. The method according to claim **2** wherein said panels are formed from paper.

**8**. The method according to claim **2** wherein said panels are formed from a non-woven material.

**9**. The method according to claim **2** wherein said panels are formed from a composite material.

**10**. The method according to claim **2** wherein said material of said panels is flaccid.

**11**. The method according to claim **2** wherein said material of said panels is stiff.

**12**. The method according to claim **2** wherein said opposite ends further comprise a pair of supports at opposite ends of said core, said supports extending from said base to said top and connected to respective ones of said faces, said supports being self-supporting to provide rigidity to said core.

**13**. The method according to claim **12** wherein said supports are formed from a felt panel.

**14**. The method according to claim **12** wherein said supports are formed from a non-woven material.

**15**. The method according to claim **12** wherein said supports are formed from a rigid board.

**16**. The method according to claim **12** wherein said wall further comprises at least one magnetic fastener located at predefined locations in each of said supports to permit attachment of said support to a similar support of a different article.

**17**. The method according to claim **16** wherein multiple magnetic fasteners are positioned on each of said supports, and are arranged at spaced intervals along a pair of parallel strips and aligned magnets on each of said strips have an opposite polarity.

**18**. The method according to claim **2** wherein the height of said core is at least 2 meters.

**19**. A kit of parts comprising:

a longitudinally flexible and extensible wall for partitioning an area of a room, said wall having a base, a top, oppositely directed surfaces extending between said base and said top, said base, top and surfaces defining a core, said core comprising a cellular structure having

18

multiple voids extending from said base to said top upon movement of said opposite directed surfaces away from each other, said base having a width of at least 10 centimeters and placed on a floor, whereby opposite ends of said core may be moved apart to expand said cellular structure and extend the length of said core and to form at least a substantially straight freestanding wall configuration, whilst maintaining its vertical extent;

at least two vertical supports, each comprising a base that is placed on the floor and a dowel extending upwards from the base; and

in assembly, said dowels of said at least two vertical supports are able to be positioned in their respective void in said core and movable to temporarily maintain said wall in an expanded serpentine configuration.

**20**. The kit of parts of claim **19** wherein there are at least three vertical supports.

**21**. The kit of parts of claim **19** wherein said dowels of said at least two vertical supports are at least the same height as a height of said core.

**22**. A longitudinally flexible and extensible wall for partitioning an area of a room, said wall having a base, a top, oppositely directed surfaces extending between said base and said top, said base, top and surfaces defining a core, said core comprising a cellular structure having multiple voids extending from said base to said top upon movement of said opposite directed surfaces away from each other, said base having a width of at least 10 centimeters and placed on a floor, whereby opposite ends of said core may be moved apart to expand said cellular structure and extend the length of said core and to form at least a substantially straight freestanding wall configuration, whilst maintaining its vertical extent, at least two vertical supports, each comprising a base that is placed on the floor and dowel extending upwards from the base, and said dowels of said at least two vertical supports positioned in their respective void in said core to temporarily flex said wall into an expanded serpentine configuration.

**23**. A kit of parts comprising:

at least two articles of flexible furniture, each of said articles of flexible furniture having a core formed from a plurality of laminar panels and each panel having a pair of oppositely directed major faces, adjacent faces of said panels being inter-connected to provide a cellular structure upon movement of abutting faces away from each other, whereby said opposite ends of said core may be moved apart to expand said cellular structure and extend the length of said core, said cellular structure being defined by voids delimited by said adjacent faces of said panel and extending in a direction transverse to the length of said core;

at least two vertical support structures, each support structure comprising a base; and

in assembly, said at least two articles of flexible furniture are stacked vertically on top of each other to form a stack, said base of each of said support structures are positioned underneath a bottom of said core of the article of flexible furniture that is at the bottom of said stack, and each one of said support structures is vertically positioned in said voids of both said at least two articles of flexible furniture to support said cores of said at least two articles of flexible furniture against lateral forces.

**24**. The kit of parts of claim **23** wherein there are at least three articles of flexible furniture and, in assembly, each one of said at least two vertical support structures is vertically

US 9,689,161 B2

19

positioned in said voids of all said at least three articles of flexible furniture that form said stack.

**25**. The kit of parts of claim **23** wherein there are at least four articles of flexible furniture and, in assembly, each one of said at least two vertical support structures is vertically positioned in said voids of all said at least four articles of flexible furniture that form said stack.

**26**. The kit of parts of claim **23** wherein each one of said support structures further comprises a wire.

**27**. A flexible furniture assembly comprising:

at least two flexible articles stacked vertically on top of each other to form a stack, each of said flexible articles having a core formed from a plurality of laminar panels and each panel having a pair of oppositely directed major faces, adjacent faces of said panels being interconnected to provide a cellular structure upon movement of abutting faces away from each other, whereby said opposite ends of said core may be moved apart to expand said cellular structure and extend the length of said core, said cellular structure being defined by voids delimited by said adjacent faces of said panel and extending in a direction transverse to the length of said core; and

at least two vertical support structures, each support structure comprising a base, said base of each of said support structures positioned underneath a bottom of said core of the flexible article that is at the bottom of said stack, and each one of said support structures vertically positioned in said voids of both said at least two articles to support said cores of said at least two flexible articles against lateral forces.

**28**. A kit of parts comprising:

at least two articles of flexible furniture, each of said articles having a core formed from a plurality of laminar panels and each panel having a pair of oppositely directed major faces, adjacent faces of said panels being inter-connected to provide a cellular structure upon movement of abutting faces away from each other, whereby said opposite ends of said core may be moved apart to expand said cellular structure and extend the length of said core, said cellular structure being defined by voids delimited by said adjacent faces of said panel and extending in a direction transverse to the length of said core;

20

at least one support structure comprising a base and a dowel secured to said base, said dowel extending from opposite sides of said base; and

in assembly, a first end of said support structure is able to be positioned in at least one of said voids in one of the said at least two articles of flexible furniture, and a second end of said support structure is able to be positioned in at least one of said voids in the other one of the said at least two articles of flexible furniture.

**29**. The kit of parts according to claim **28** wherein said dowel comprises two pins, each pin removably attachable to a different one of said opposite sides of said base.

**30**. The kit of parts according to claim **28** wherein said support structure extends along only a portion of said void.

**31**. The kit of parts according to claim **28** further comprising a plurality of support structures, which are arranged along said cores.

**32**. The kit of parts according to claim **31** wherein said plurality of support structures are spaced from one another when the kit is assembled.

**33**. The kit of parts according to claim **28** wherein said dowel of said support structure is tubular.

**34**. The kit of parts according to claim **28** wherein said dowel extends through said base.

**35**. A flexible furniture assembly comprising:

at least two flexible articles stacked on top of each other, each of said flexible articles having a core formed from a plurality of laminar panels and each panel having a pair of oppositely directed major faces, adjacent faces of said panels being inter-connected to provide a cellular structure upon movement of abutting faces away from each other, whereby said opposite ends of said core may be moved apart to expand said cellular structure and extend the length of said core, said cellular structure being defined by voids delimited by said adjacent faces of said panel and extending in a direction transverse to the length of said core; and

at least one support structure comprising a base and a dowel secured to said base, said dowel extending from opposite sides of said base, a first end of said support structure positioned in at least one of said voids in one of the said at least two articles of flexible furniture, and a second end of said support structure positioned in at least one of said voids in the other one of the said at least two articles of flexible furniture.

* * * * *